2002 WY 158

JAG, Appellant (Respondent/Obligor),

v.

STATE of Wyoming, DEPARTMENT OF FAMILY SERVICES, DIVISION OF PUBLIC ASSISTANCE AND SOCIAL SERVICES; State of Wyoming, ex rel., MB, minor child, Appellees (Petitioners),

and

WLC, n/k/a WLB, Appellee (Respondent/Obligee).

No. C–01–4.

Supreme Court of Wyoming.

Oct. 21, 2002.

Representing Appellant: Pro Se.

Representing Appellee State of Wyoming: Hoke MacMillan, Attorney General; Michael L. Hubbard, Deputy Attorney General; and Sue Chatfield, Assistant Attorney General.

Representing Appellee WLC n/k/a WLB: Pro Se.

Before HILL, C.J., and GOLDEN, LEHMAN *, KITE, and VOIGT, JJ.

* Chief Justice at time of expedited conference.

HILL, Chief Justice.

[¶ 1]  Appellant JAG[1] seeks review of the district court's Judgment and Order which established his paternity of a child (the Child), awarded judgment for past child support to the date of the Child's birth, ordered future child support, and provided for visitation.  The other parties to this appeal are WLC (a/k/a WLB and WLS), who we will refer to as Mother, and the State of Wyoming acting through the Department of Family Services, Child Support Enforcement, which we shall refer to as the State.  JAG is appearing pro se.  Mother did not participate in the appeal.

[¶ 2]  We will affirm in part and reverse in part and remand to the district court for further proceedings consistent with this opinion.  The district court's order establishing JAG to be father of the Child and awarding future support will be affirmed.  That portion of the order directing the payment of retroactive support will be reversed.

## ISSUES

[¶ 3]  JAG sets out these issues in his brief:

A.  Did the court deny JAG his right to due process, by not excepting the applicable laws that should bar WLB, appellee, from attempting to recover arrearages by equitable estoppel and laches?

B.  To preclude enforcement of some or all arrearages, the obligor must present evidence establishing full or part defense.  Did the district court err by not allowing JAG the special rule of evidence to present 1987 court orders?

C.  Did the court err in calculating the amount of child support due?  Shouldn't the court consider all minor children who are in need of support?

D.  Change of circumstances, requiring modification.

The State abbreviates the issues to these two matters:

I.  Did the district court correctly determine paternity and order retroactive and future child support in the appropriate amount?

II.  Does the doctrine of laches prohibit Child Support Enforcement's petition for paternity and child support in this case?

## FACTS AND PROCEEDINGS BELOW

[¶ 4]  From the limited record available we are able to discern at least some of the factual background of this case.  The Child who is the subject of these proceedings was born May 5, 1985.  The Child is now over seventeen years of age.  The Child was conceived in the state of Ohio in 1984.  Mother moved to Wyoming not knowing she was pregnant.  JAG has never resided in Wyoming and does not appear to have had any contact with the State of Wyoming other than his limited appearance in this lawsuit.  In the years since 1985, JAG married and is the father of three young children.

[¶ 5]  The State initiated its first attempt to establish JAG's paternity on August 25, 1986.  That action was initiated under the Uniform Reciprocal Enforcement of Support Act. Wyo. Stat. Ann. §§ 20–4–101—138 (Michie 1977 and Cum.Supp.1986).  In the record of that case, there appears a document denominated as "Testimony," wherein Mother indicated that JAG gave her a gift of $50.00 in June of 1986.  In addition, Mother indicated that JAG's mother sent the Child a birthday card.  The information contained in this "Testimony" further indicated that JAG was aware that he was the father of the Child.  Notice of that action was served on JAG, and all parties had JAG's address in Ohio. On September 4, 1987, an assistant district attorney in Natrona County filed a motion to dismiss the action, stating: "[T]he initiating party, Department of Public Assistance and Social Services, has terminated their case and requests dismissal of this action, and the matter is therefore not within the jurisdiction of the Court."  The action was dismissed by the Wyoming district court

1.  Proceedings in paternity matters are confidential.  Wyo. Stat. Ann. § 14–2–117 (LexisNexis 2001).  The foremost purpose of confidentiality is to protect the minor children involved from the stigma of public disclosure.  The parents are afforded confidentiality also so as to safeguard the confidentiality intended most directly for the protection of the child.

on September 4, 1987. The matter was also dismissed by the Ohio Common Pleas Court on August 1, 1988, because "there has been no action on this matter by the State of Wyoming."

[¶ 6] On March 10, 1993, a virtually identical action was reinitiated by the State, although this second suit was filed under Wyo. Stat. Ann. §§ 20–6–101—401 (Michie 1987 and Cum.Supp.1992) and Wyo. Stat. Ann. §§ 14–2–101—319 (Michie 1986 and Supp. 1992). By order entered on January 13, 1994, that action was dismissed for the asserted reason that the State was unable to secure service on JAG. JAG asserts in his brief that he was still residing in the same community and the failure of a process server to find him could not be attributed to him.

[¶ 7] On April 22, 1998, a third petition to establish paternity and child support was filed in the district court. This petition relied on the same statutory grounds as the 1993 petition. On December 16, 1998, an untitled document mailed to the district court by JAG was filed. It contained this information:

At this time, I[JAG], am denying that I am the paternal father to "minor child".... I am requesting a genetic blood test. A DNA laboratory in the State of Ohio has been contacted regarding this matter.

I am requesting for the convenience of the "Mother" ... "minor child" ... alleged "paternal father" ..., that the DNA testing take place through this laboratory. The number is 1–800–611–5728.

JAG filed no other papers in the form of an answer to the petition.

[¶ 8] On May 10, 2001, an informal paternity hearing was held but it was not reported. It appears to be uncontroverted that JAG participated in that hearing by telephone and without the assistance of counsel. In an order entered on May 16, 2001, the district court: Denied JAG's oral motion for continuance, determined that based upon paternity testing JAG was the father of Child, awarded custody of Child to Mother, ordered JAG to pay temporary child support of $169.00 a month, ordered reasonable visitation in JAG, ordered the parties to submit

financial affidavits within 30 days, and entered judgment in favor of the State in the amount of $239.00 for filing and service fees and costs of genetic testing. On September 5, 2001, a final order was entered, and it contained the following provisions: JAG is the father of the Child, Mother awarded unassigned retroactive presumptive child support of $30,152.60, and the State awarded assigned retroactive presumptive child support of $2,705.40, as well as expenses of $207.06, genetic testing costs of $174.00, and service and filing fees of $65.00, and JAG was ordered to pay future support. An income withholding order was issued by the clerk of district court requiring JAG's employer to withhold $200.00 for support per month, and $200.00 in arrears per month. There is no order of the district court setting the arrears payment at $200.00 per month nor is there any indication in the record of how that $200.00 is to be divided between the unassigned and assigned arrearages.

## INTRODUCTION

[¶ 9] We include a brief introduction so as to clarify two matters. First, JAG does not contest the jurisdiction of the district court over his person in this appeal, and he did not do so below. However, because the district court's *in personam* jurisdiction over JAG appears to be in question, we find it prudent to resolve that issue both for clarity in this case, as well as for future cases which may have to tackle this same sort of circumstance.

[¶ 10] Second, we want to note that JAG does not challenge the finding of paternity or his obligation to pay child support until his son reaches the age of majority or is otherwise emancipated. (There is no evidence in the record that the Child is impaired and, therefore, eligible for support beyond his minority.) JAG only challenges the district court's decision to require him to pay the arrearages.

## JURISDICTION

[¶ 11] The question of jurisdiction arises because JAG was not served in Wyoming nor did he have any contacts with Wyoming. The Child was not conceived in

Wyoming. There was no basis for jurisdiction in Wyoming unless JAG agreed to it or blundered into it. As we shall conclude at the end of this section, he did blunder into it, but we think it prudent to discuss the matter in some detail because the question is a very close one, given: (1) The very limited "appearances" JAG made in the district court; (2) the fact that he was not represented by counsel; (3) that no record was made of the hearings; and (4) that Wyoming statutes contemplate that cases such as this one be prosecuted under Wyo. Stat. Ann. §§ 20–4–139—194 (LexisNexis 2001) (Uniform Interstate Family Support Act which supplanted the Uniform Reciprocal Enforcement of Support Act which was the basis for the initial proceedings in this case).

[¶ 12] Wyo. Stat. Ann. § 20–4–142 (LexisNexis 2001) provides:

§ 20–4–142. **Basis for jurisdiction over nonresident.**

**(a) In a proceeding to establish, enforce, or modify a support order or to determine parentage, a tribunal of this state may exercise personal jurisdiction over a nonresident individual or the individual's guardian or conservator if:**

(i) The individual is personally served with notice within the state;

(ii) **The individual submits to the jurisdiction of this state by consent, by entering a general appearance, or by filing a responsive document having the effect of waiving any contest to personal jurisdiction;**

(iii) The individual resided with the child in this state;

(iv) The individual resided in this state and provided prenatal expenses or support for the child;

(v) The child resides in this state as a result of the act or directives of the individual;

(vi) The individual engaged in sexual intercourse in this state and the child may have been conceived by that act of intercourse;

(vii) The individual asserted parentage in this state pursuant to W.S. 14–2–101 through 14–2–120;

(viii) There is any other basis consistent with the constitutions of this state and the United States for the exercise of personal jurisdiction.

(Emphasis added.)

[¶ 13] In order for a court to acquire jurisdiction over a defendant, that defendant must be properly served or must "voluntarily" appear. A judgment entered without the court having jurisdiction is null and void. A defendant may waive his right to challenge a court's jurisdiction. Such a challenge should be made at the defendant's soonest opportunity. Failure to timely broach the issue with the court may result in waiver of that defense. Most importantly for this case, where a defendant appears voluntarily, without questioning the court's personal jurisdiction, that appearance is the equivalent of proper service of process. *Matter of Adoption of MSVW*, 965 P.2d 1158, 1162 (Wyo.1998); and *see Ostermiller v. Spurr*, 968 P.2d 940, 943 (Wyo.1998) (consent to court's jurisdiction for one purpose may result in court's jurisdiction for any related purpose). We have held that a party will be deemed to have appeared in an action, even though no formal pleadings have been entered, when contacts between the parties clearly demonstrate an intent to defend. *Sanford v. Arjay Oil Company*, 686 P.2d 566, 571 (Wyo.1984); *also see Hochhalter v. Great Western Enterprises*, 708 P.2d 666, 670–72 (Wyo.1985).

[¶ 14] Very recently we provided this further summary of our review responsibilities under circumstances such as these:

Our standard of review for jurisdictional issues, including sufficiency of process, should be familiar to every litigant. The Wyoming Supreme Court "has the inherent power, and the duty, to address jurisdictional defects on appeal even though they have not been called to our attention by a litigant." *Robbins v. South Cheyenne Water and Sewage Dist.*, 792 P.2d 1380, 1384 (Wyo.1990). "The first and fundamental question on every appeal is that of jurisdiction; this question cannot be waived; it is open for consideration by the reviewing court whenever it is raised by any party, or it may be raised by the court

of its own motion." *Gardner v. Walker,* 373 P.2d 598, 599 (Wyo.1962). When a lower court acts without jurisdiction, this court will notice the defect and have jurisdiction on appeal, not on the merits, but merely for the purpose of correcting the error of the lower court in maintaining the suit. *United States v. Corrick,* 298 U.S. 435, 440, 56 S.Ct. 829, 832, 80 L.Ed. 1263, reh'g denied 298 U.S. 692, 56 S.Ct. 951, 80 L.Ed. 1410 (1936).

*Gookin v. State Farm Fire and Cas. Ins. Co.,* 826 P.2d 229, 232 (Wyo.1992). Service of process must strictly comply with the requirements set forth in W.R.C.P. 4. *MN v. CS,* 908 P.2d 414, 415 (Wyo.1995). Proper service of process is a necessary condition precedent to the acquisition of personal jurisdiction under the Wyoming and federal Constitutions. Wyo. Const. art. 1, § 6; U.S. Const. amend. XIV, § 1; *Gookin,* 826 P.2d at 232.

*CRB v. State, Department. of Family Services,* 974 P.2d 931, 934 (Wyo.1999).

[¶ 15] In this case, JAG was served with process in Ohio. He filed a written response denying paternity. He was given notice of the hearing and he appeared, albeit by telephone. On this basis, we conclude that the district court did have jurisdiction to decide all issues relevant to the paternity proceedings, including all issues regarding child support and arrearages.

### ARREARAGES

**Standard of Review**

[¶ 16] We have had occasion to visit a very similar issue recently. In *Whitt v. State ex rel. Wright,* 2001 WY 128, ¶¶ 10–15, 36 P.3d 617, ¶¶ 10–15 (Wyo.2001), we held:

[¶ 10] This Court has consistently held that Wyo. Stat. Ann. § 14–2–204(d) does not refer to expenses actually incurred, but rather is much broader. The State brought this case in the name of the children. Thus, the focus is not on the amount assigned to the State, but rather on the amount the appellant owes to his children. In *Holtz v. State ex rel. Houston,* 847 P.2d 972, 977 (Wyo.1993), we stated:

It seems reasonably clear that the statutes contemplate provisions in the judgment for more than recovery of "expenses incurred." (In this case, AFDC funds.) ... Likewise, there is not a provision that limits the state (if it is the petitioner) to expenses incurred.

Further, in *Thomas v. Thomas,* 983 P.2d 717, 720 (Wyo.1999), this Court stated:

The language of the statute leads to the clear inference that the legislature intended and recognized that child support would be collected retroactively in cases where a parent has abandoned a child and refused to participate in the support of the child.

Thus, the appellant owes his children reasonable support from the date of their birth. This brings us to the key issue in this case.

### BACK CHILD SUPPORT

[¶ 11] The appellant's primary contention is that the State did not meet its burden of proof that he owed back child support in the amount of $18,322.65. Again, the appellant acknowledges his parental obligations and that they relate back to the date of birth of his children. He argues, however, that the back child support amount of $18,322.65 is unsupported by the evidence.

[¶ 12] While the findings of a trial judge concerning conclusions of law and disposition of the issues are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. *Shores v. Lindsey,* 591 P.2d 895, 899 (Wyo.1979). Because this Court does not weigh the evidence de novo, findings may not be set aside because we would have reached a different result. *Id.* On appeal, findings of fact are not set aside unless they are clearly erroneous. *Id.* " 'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Cross v. Berg Lumber Co.,* 7 P.3d 922, 928 (Wyo.2000) (*quoting Hopper v. All Pet Animal Clinic, Inc.,* 861 P.2d 531, 538–39 (Wyo.1993)). The appellant bears the bur-

den of persuading the appellate court that a finding is erroneous. *Cross,* 7 P.3d at 928 (*quoting Hopper,* 861 P.2d at 538–39).

[¶ 13] At the end of the June 8, 2000, hearing, the DFS attorney informed the district court that he could at that time provide to the appellant's attorney "an AFDH which shows the AFDC, what we used to call Aid for Dependent Children, paid to the mother." He was ordered to do so and complied. The district court then ordered counsel to prepare and submit their income and child support calculations, and a final hearing was scheduled. DFS's calculations with attachments and appellant's calculations and exhibits are both in the record.

[¶ 14] In establishing the amount of back child support owed, the State attempted to determine the income of both parents for previous years and then applied the current child support guidelines to establish the amount of support owed. Neither parent could give complete and accurate information regarding income for the previous years for which child support was owed. The State imputed income to the parents for the time periods for which they could not supply accurate and complete information.

[¶ 15] Unfortunately, the record does not disclose any factual basis for the amount of income imputed by the State. For instance, while a hearing was held, no questions were asked of Wright regarding her prior employment history. Certain periods of imputed income for Wright seem to represent minimum wage for a forty-hour work week. There simply is no factual basis to support that such imputed income was reasonable for Wright over the time periods at issue. Thus, we are compelled to remand this case to the district court for an evidentiary hearing so the State can establish a factual basis for its computations.

[¶ 17] In this case we have even less information than was available in the *Whitt* case. Wyoming statutes require that an evidentiary record be made in the course of establishing child support:

§ 20–2–308. **Financial affidavits required; financial reporting.**

(a) No order establishing or modifying a child support obligation shall be entered unless financial affidavits on a form approved by the Wyoming supreme court which fully discloses the financial status of the parties have been filed, or the court has held a hearing and testimony has been received.

(b) Financial affidavits of the parties shall be supported with documentation of both current and past earnings. Suitable documentation of current earnings includes but is not limited to pay stubs, employer statements, or receipts and expenses if self-employed. Documentation of current earnings shall be supplemented with copies of the most recent tax return to provide verification of earnings over a longer period.

(c) The court may require, or the parents may agree, to exchange financial and other appropriate information once a year or less often, by regular mail, for the purpose of analyzing the propriety of modification of court ordered child support.

Wyo. Stat. Ann. § 20–2–308 (LexisNexis 2001).

[¶ 18] In so holding, we deem it prudent to note that JAG had some responsibility to provide information to the district court so that the child support issues could be resolved. However, the district court must ensure that proceedings to establish paternity are reported, so that a transcript of those proceedings will be available in the event of an appeal. This is so whether or not the noncustodial parent is represented by counsel, but *a fortiori* where counsel does not represent the noncustodial parent. We are not faced with a situation where a noncustodial parent refused to cooperate in the child support calculation process, thus making the development of a coherent record impossible. Rather, we view these proceedings as a failure of the district court and the State to be attentive to the need for a record suitable for the purpose of meaningful review on appeal. Thus, we are compelled to remand this case to the district court for an evidentiary hear-

ing so that an adequate factual record can be made with respect to arrearages.[2]

## LACHES, EQUITABLE ESTOPPEL, ETC.

[¶ 19] JAG contends that the district court erred in not denying Mother's and State's claims for child support arrearages on the basis of laches and equitable estoppel, as well as other related theories. JAG's argument is that although Mother filed suit in 1986 seeking a declaration of his paternity, the dismissal of that action should relieve him of the "notice" of paternity it might otherwise have implied. In addition, the action was not finally seen through to a finish until September 5, 2001. The State defends against this assertion by noting that JAG did not raise it below and contending that it cannot be considered on appeal. The State also contends that our precedents establish that child support is not subject to any form of waiver.

[¶ 20] Because this case must be remanded for further proceedings to make a record, and because the dilatoriness of the State and Mother is a factor in the child support equation in this case, we will respond briefly to this issue. The State contends that the delay was caused because the State was unable to locate JAG. JAG contends that he was always at a location known to Mother and State, and that the failure to obtain service cannot be attributed to him, and the record bears out JAG's position. JAG contends that the real reason for the dismissals is that Mother married on two occasions and asked that the earlier petitions be dismissed so as not to "stress" those relationships with the

paternity action. We have held that laches does not apply to an action to recover adjudicated child support arrearages. *Hammond v. Hammond*, 14 P.3d 199, 201–3 (Wyo.2000); *Hollingshead v. Hollingshead*, 942 P.2d 1104, 1106–8 (Wyo.1997); *also see Whitt*, 36 P.3d at 622–23 (collecting cases). We have held that laches cannot bar a separate paternity action by a child. *Matter of Paternity of SDM*, 882 P.2d 1217, 1220–25 (Wyo.1994). In this case, paternity and child support were not adjudicated until September of 2001, when the Child was sixteen years of age. In a case with somewhat similar facts we held that it was not an abuse of discretion for a district court to award $50.00 a month in back child support retroactive to the date of the child's birth. *Ellison v. Walter ex rel. Walter*, 834 P.2d 680, 683–85 (Wyo.1992).

[¶ 21] This subject is exhaustively annotated at: Jeffery W. Santema, *Liability of Father for Retroactive Child Support on Judicial Determination of Paternity*, 87 A.L.R.5th 361 (2001). Our case law to date has not dealt with the many variables that may occur in paternity actions with respect to retroactive support. With the information provided by the cited annotation, and the cases cited therein, district courts and parties will be guided in the resolution of such questions as they arise. *Also see In re Paternity of IC*, 971 P.2d 603, 608 (Wyo.1999) (within district court's discretion to limit retroactive support where legitimate basis exists to do so); *Hasty v. Hasty*, 828 P.2d 94, 98–100 (Wyo.1992) (children born afterward must at least be considered by district court[3]). On remand, the district court should ad-

---

2. In this regard we also direct the parties', as well as the district court's, attention to this statute:

§ 14–2–116. Free transcript for appeal.
(a) Repealed by Laws 1993, ch. 198, § 2.
(b) If a party is financially unable to pay the cost of a transcript, the court shall furnish on request a transcript for purposes of appeal.

Wyo. Stat. Ann. § 14–2–116 (LexisNexis 2001).
Although JAG did not ask that a court reporter be present for proceedings in this paternity case, this statute requires that such proceedings be reported. If the proceedings are not reported, then it becomes an impossibility for "a party" to

make such a request for the appeal, if there is one. Clearly, this statute is a legislative decision that paternity proceedings are too important to be decided on anything less than a complete record. Our decisions have also demonstrated a strong preference for complete records in cases such as this. In a proceeding to establish paternity, the proceedings with respect to child support are to be conducted pursuant to Title 20. Wyo. Stat. Ann. § 14–2–113(d) (LexisNexis 2001).

3. The materials available for this appeal indicate that the district court may have considered the children born afterward, but the record does not reflect that.

dress the issue to the extent that a party raises it.

## CONCLUSION

[¶ 22] The order of the district court is affirmed in part and reversed in part. That portion of the district court's order establishing JAG to be the father of the Child is affirmed, as is the determination of future support. The district court's order with respect to retroactive support is reversed, and the matter is remanded to the district court for further proceedings consistent with this opinion.