# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 161

**OCTOBER TERM, A.D. 2013**

**December 27, 2013**

KELLY SUZANNE BRUSH, f/k/a
KELLY SUZANNE DAVIS,

Appellant
(Plaintiff),

v.

ROGER RYAN DAVIS,

Appellee
(Defendant).

S-13-0081

*Appeal from the District Court of Natrona County*
The Honorable David B. Park, Judge

*Representing Appellant:*
    John D. Chambers, Casper, Wyoming.

*Representing Appellee:*
    Roger Ryan Davis, *pro se.*

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KITE, Chief Justice.**

[¶1]   The district court modified custody and support for the parties' minor child. Appellant Kelly Suzanne Brush f/k/a Kelly Suzanne Davis (Mother) appeals, claiming the district court did not have jurisdiction to grant a change of custody or support, she was denied due process of law when a default judgment was entered against her, and the district court abused its discretion when awarding child support.

[¶2]   We affirm.

## ISSUES

[¶3]   Mother presents the following issues on appeal:

  I.   Whether the district court lacked subject matter jurisdiction to grant a default judgment due to Appellee's failure to comply with the statutory pleading requirements?

  II.   Whether the Appellant was denied due process when default was improperly entered against her and subsequently, improperly upheld against Appellant?

  III.   Whether the District Court abused its discretion in entering a child support [order] due to its failure to comply with statutory child support requirements?

Appellee Roger Ryan Davis (Father) maintains the district court had jurisdiction and correctly ruled on the child custody and support issues.

## FACTS

[¶4]   Father and Mother divorced in 2005 in Natrona County.  Mother was awarded primary custody of the parties' children,[1] and Father was ordered to pay child support. On November 2, 2012, Father filed a Petition for Modification of Custody and Time-Sharing in the same court under the same docket number.  Acting pro se, Father drafted his own petition and did not use the Family Law Pro Se Forms provided by the Wyoming Supreme Court.  Although his petition stated that a copy of the original divorce decree was attached as an exhibit, it was not.

---

[1] Since the divorce, one of the parties' children reached the age of majority.  Consequently, this modification proceeding only concerns the remaining minor child.

1

[¶5]    Father filed an Affidavit of Service indicating that Mother had been served with a summons and "Petition to Modify Custody and Support" on November 3, 2012, in Casper.  On November 29, 2012, Father filed an Application for Entry of Default against Mother, stating that she had been served on November 3, 2012, but had not responded within the time allowed by law.  The accompanying Affidavit of Petitioner in Support of Default incorrectly stated that Mother was served on November 5, 2012.  The clerk of the district court entered a default against Mother.  Father presented a proposed order modifying custody and support, but the district court refused to enter it without a hearing.

[¶6]    At the hearing on January 18, 2013, neither party was represented by counsel, so the district court explained that Father had the burden of proving a substantial change of circumstances had occurred since the last order and it was in the best interest of the child to change custody.  The judge also stated:

> [Mother] was properly served and has not answered.  So [Father] is entitled to present any witnesses that he has, and he may testify himself.  [Mother] may cross-examine any witnesses he calls, but you cannot testify yourself or present any witnesses because you are in default for not having filed an answer.

The hearing proceeded under those parameters and Mother cross examined the witnesses, including Father, and presented a closing statement arguing that it was in the child's best interest to remain in her custody.

[¶7]    The district court agreed there had been a substantial change of circumstances and it was in the child's best interest for Father to be awarded custody.  The judge stated, however, that "[i]t's not clear to me what the parties' incomes are.  So I would like both parties to submit financial affidavits within five days, and I'll determine child support."  Father filed a confidential financial affidavit, but Mother did not.  The district court used an Affidavit of Indigency, which Mother had filed prior to the hearing apparently requesting appointment of counsel, to determine Mother's income.  It ordered Mother to pay $340 per month, indicating that was the presumptive amount of child support determined by using the child support guidelines.  Mother retained an attorney and filed a timely notice of appeal.

## DISCUSSION

### A. Jurisdiction

[¶8]    Mother claims the district court did not have subject matter jurisdiction over Father's petition.  Subject matter jurisdiction is an issue of law that may be raised at any

2

time by any party or the court on its own motion. *JA v. State, Dep't of Family Servs. (In re DSB),* 2008 WY 15, ¶ 9, 176 P.3d 633, 636 (Wyo. 2008).

[¶9]   "In general, jurisdiction is 'the power to hear and determine the matter in controversy between the parties.'"   *Id.,* ¶ 10, 176 P.3d at 636, quoting *McGuire v. McGuire,* 608 P.2d 1278, 1290 (Wyo. 1980).   A court has subject matter jurisdiction when it has the authority to consider and decide "cases of the general class of which the proceeding belongs."   *DF v. MLM (In re MKM),* 792 P.2d 1369, 1373 (Wyo. 1990). "Subject matter jurisdiction either exists or it does not, and 'before proceeding to a disposition on the merits, a court should be satisfied it does have the requisite jurisdiction.'"   *JA,* ¶ 10, 176 P.3d at 636, quoting *DF,* 792 P.2d at 1373.

[¶10]  Mother claims that jurisdiction was lacking because Father did not attach a copy of the original divorce decree to his petition for modification of custody as required by Wyo. Stat. Ann. § 20-2-203(c) (LexisNexis 2013):

> (c) Any party seeking to enforce or modify a custody order pursuant to this section shall attach a certified copy of the custody order to the petition to be enforced or modified. A certified copy of an order entered by a Wyoming court providing for the care, custody or visitation of children may be filed in the office of the clerk of the district court of any county in this state in which either parent resides if neither parent resides in the county of original jurisdiction.

[¶11]  A court that enters a custody order has "continuing subject matter jurisdiction to enforce or modify the decree concerning the care, custody and visitation of the children as the circumstances of the parents and needs of the child require, subject to the provisions of the Uniform Child Custody Jurisdiction and Enforcement Act." Wyo. Stat. Ann. § 20-2-203(a).   Father's modification petition was filed in the same district court that granted the original divorce decree in which Mother was awarded primary physical custody of the child.   Under § 20-2-203(a), the district court had continuing jurisdiction to enforce and modify the custody provisions of the decree.

[¶12]  As Mother points out, § 20-2-203(c) requires a petitioner to attach a certified copy of "the custody order to the petition to be enforced or modified."   Father's petition stated that a copy of the decree was attached as "Exhibit A," but he failed to do so.  Section 20-2-203(c) does not, however, indicate that such a failure undermines the district court's continuing subject matter jurisdiction over the custody and control of the children granted by § 20-2-203(a).   Mother does not direct us to any case where we have ruled that the district court is deprived of jurisdiction over a custody matter simply because the petitioner neglects to attach a copy of the order.

3

[¶13] Although not directly on point, we held in *Excel Constr., Inc. v. Town of Lovell,* 2011 WY 166, ¶ 27, 268 P.3d 238, 243 (Wyo. 2011), that the claimant's failure to attach an exhibit breaking down its governmental claim did not deprive the district court of jurisdiction because the precise amount of its damages was identified in its notice of claim. This was true even though the strict constitutional and statutory requirements for governmental claims were involved. Here, Father identified the decree he was seeking to modify by title and date in his petition which was filed in the same court and under the same docket number as the original decree. The transcript of the default hearing plainly shows that Mother was aware of the original decree and the grounds for Father's petition for modification. Father's failure to attach a copy of the referenced order clearly did not deprive the district court of jurisdiction over the modification action.

[¶14] Mother also claims the district court lacked subject matter jurisdiction because Father did not give notice of any other pending proceedings involving the child under the Uniform Child Custody Jurisdiction Act. Wyo. Stat. Ann. § 20-5-309 states in relevant part:

> (a) Subject to a confidentiality order entered pursuant to W.S. 35-21-112 or any other court order allowing a party to maintain confidentiality of addresses or other identifying information or other law providing for the confidentiality of procedures, addresses and other identifying information, in a child custody proceeding each party in its first pleading or in an attached affidavit shall give information, if reasonably ascertainable, under oath as to the child's present address or whereabouts, the places where the child has lived during the last five (5) years and the names and present addresses of the persons with whom the child has lived during that period. The pleading or affidavit shall state whether the party:
>
> > (i) Has participated, as a party or witness or in any other capacity, in any other proceeding concerning the custody of or visitation with the child, and if so, the pleading or affidavit shall identify the court, the case number and the date of the child custody determination, if any;
>
> > (ii) Knows of any proceeding that could affect the current proceeding, including proceedings for enforcement and proceedings relating to domestic violence, protective orders, termination of parental rights and adoptions, and if so, the pleading or affidavit shall identify the court, the case number and the nature of the proceeding; and

4

(iii) Knows the names and addresses of any person not a party to the proceeding who has physical custody of the child or claims rights of legal custody or physical custody of, or visitation with, the child, and if so, the pleading or affidavit shall list the names and addresses of those persons.

(b) If the information required by subsection (a) of this section is not furnished, the court, upon motion of a party or its own motion, may stay the proceeding until the information is furnished.

[¶15] Father's petition did not include the required statement about other proceedings involving the children.[2] It is notable that under § 20-5-309(a) **each** party has the obligation to provide the information in his or her initial pleading. By not properly responding to the petition, Mother also neglected this responsibility. In any event, Mother does not assert that any other proceedings exist. Although the requirement is mandatory, the statute does not indicate it is jurisdictional. To the contrary, § 20-5-309(b) states that the court **may stay** the proceeding until the information is furnished, but it is not required to do so. The statute certainly does not say that the district court does not have jurisdiction over the matter if the requisite statement is omitted. The district court had subject matter jurisdiction over Father's petition.

## B. Due Process/Default Procedure

[¶16] We apply the following standard of review to a claim of a violation of due process:

The party claiming an infringement of his right to due process has the burden of demonstrating both that he has a protected interest and that such interest has been affected in an impermissible way. The question is whether there has been a denial of fundamental fairness.

*PRG v. State, Dep't of Family Servs. (In re KMO),* 2012 WY 100, ¶ 30, 280 P.3d 1216, 1224 (Wyo. 2012), quoting *DH v. Wyo. Dep't of Family Servs. (In re "H" Children),* 2003 WY 155, ¶ 38, 79 P.3d 997, 1008 (Wyo. 2003). *See also DL v. State, Dep't of Family Servs. (In re MC),* 2013 WY 43, ¶ 29, 299 P.3d 75, 81 (Wyo. 2013).

[¶17] Mother claims her due process right was violated because the affidavit of service, affidavit in support of default and order identified Father's petition as a "Petition to

---

[2] The Supreme Court form for modification of custody includes the required statements; however, Father did not use the form for his petition.

Modify Custody and Support" rather than by its actual title, "Petition for Modification of Custody and Time-Sharing," and Father's affidavit in support of his request for entry of default included the incorrect date of service of process on Mother. It is true that these matters were misstated in Father's pleadings. Nevertheless, Mother does not claim that she was not served with Father's petition, and it is clear from the record and her statements at the hearing that she was well aware of his assertions and the issues to be determined at the hearing. Mother makes no showing of how the clerical errors in identifying Father's petition interfered with the fundamental fairness of the procedure. The fact that the pleadings recited the incorrect title of the petition does not, without more, establish a due process violation.

[¶18] Father's affidavit for entry of default stated that Mother was served on November 5, 2012, while the affidavit of service and application for entry of default stated that service occurred on November 3, 2012. The error in Father's affidavit can probably be attributed to the fact that the affidavit of service was signed on November 5, 2012, although service had actually occurred on November 3, 2012. Again, there is no indication that Mother was denied fundamental fairness by this misstatement. The default was entered on November 29, 2012, well after the twenty day deadline for answering the petition. Mother's right to due process was not violated by these minor errors.

[¶19] Mother also asserts her due process right was violated when the district court did not allow her to present evidence at the default hearing. Even though Mother defaulted, the district court refused to enter an order modifying custody without holding a hearing to determine if Father could establish a substantial change in circumstances and that it was in the child's best interest to grant Father custody. Because Mother was in default, however, the district court did not allow her to present evidence, although she was allowed to cross examine Father's witnesses and make a closing statement.

[¶20] W.R.C.P. 55 governs civil default and states in pertinent part:

> (a) *Entry*. – When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.

> (b) *Judgment*. – Judgment by default may be entered as follows:

> (1)    By the Clerk. When the plaintiff's claim against a defendant is for a sum certain, or for a sum which can by computation be made certain, the clerk upon request of the

6

plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear . . . .

(2)     By the Court. In all other cases the party entitled to a judgment by default shall apply to the court therefor . . . . If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute.

(c) *Setting Aside Default*. – For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

W.R.C.P. 60(b) states in relevant part:

On motion, and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. . . .

[¶21] Defaults are not preferred in child custody cases, so if there is good cause to set aside entry of default or justification under Rule 60(b) to set aside a default judgment,

7

relief will be readily granted. *See Esquibel v. Esquibel,* 917 P.2d 1150, 1152 (Wyo. 1996). However, the defaulting party must demonstrate a basis for such relief. In *In re JLB,* 914 P.2d 828, 829 (Wyo. 1996), we stated "[a] default judgment can only be reversed pursuant to W.R.C.P. 60" and, in absence of such a motion, we normally do not review a default judgment. Mother made no effort, pursuant to Rule 55(c), to set aside the entry of default prior to the default hearing. After the default judgment and retaining counsel, she still made no effort to set it aside under Rule 60(b). Instead of following the proper procedure for setting aside the default, Mother contested the judgment on appeal by arguing that the default hearing procedure violated her right to due process.

[¶22] Although we normally would not address the validity of the default judgment in light of Mother's failure to file a Rule 60(b) motion to set aside the default judgment, we will briefly address the claim that her due process right was violated. Even though Mother had defaulted, the district court refused to enter an order without a hearing. In accordance with Rule 55(b)(2), it held a hearing to determine whether Father could establish that a substantial change in circumstances had occurred and, if so, whether the child's best interests would be served by a change of custody.

[¶23] At the hearing, the district court allowed Mother to cross examine Father's witnesses and make a closing statement concerning the child's best interests, but it did not allow her to present evidence of her own. This procedure was consistent with our precedent. In *Noonan v. Noonan,* 2005 WY 145, ¶ 7, 122 P.3d 964, 965-66 (Wyo. 2005), we discussed the requirements of Rule 55(b)(2) in the context of a default divorce decree:

> The clear import of [Rule 55(b)(2)], in the context of the present case, is to require the district court to base its findings of fact regarding property distribution, child custody, visitation, and support on some evidence in the record. An entry of default prevents the defaulted party from appearing and presenting evidence; it does not relieve the non-defaulting party of its obligation to produce an evidentiary basis for the desired relief, nor does it relieve the district court of its obligation to base its findings of fact upon such evidence. *Spitzer v. Spitzer,* 777 P.2d 587, 592–93 (Wyo.1989).

In the absence of a basis to set aside the default judgment, Mother was given the process she was due.[3]

### 3.    *Child Support*

---

[3] Mother does not claim that the district court's ruling modifying custody was an abuse of discretion or unsupported by the evidence at the hearing.

[¶24]  In her final issue, Mother claims the district court erred by determining the amount of child support she owed without receiving confidential financial affidavits or appropriate evidence of the parties' incomes and without determining the presumptive child support amount.  Determinations concerning child support are generally left to the district court's discretion.  *Lee v. Lee,* 2013 WY 76, ¶ 7, 303 P.3d 1128, 1132 (Wyo. 2013), citing *Verheydt v. Verheydt,* 2013 WY 25, ¶ 19, 295 P.3d 1245, 1250 (Wyo. 2013); *Witowski v. Roosevelt,* 2009 WY 5, ¶ 13, 199 P.3d 1072, 1076 (Wyo. 2009).  We do not, therefore, disturb a district court's ruling unless it abused its discretion.  To determine whether an abuse of discretion occurred, we analyze the reasonableness of the district court's decision.  *Verheydt,* ¶ 19, 295 P.3d at 1250.

[¶25]  Under our statutes, the noncustodial parent must pay the presumptive child support amount unless there are specific reasons to deviate from that amount.  Wyo. Stat. Ann. § 20-2-307(b) (LexisNexis 2013); *Lee,* ¶ 4, n. 4, 303 P.3d at 1131, n. 4.  The presumptive child support amount is calculated using the parents' net incomes.  Wyo. Stat. Ann. § 20-2-304 (LexisNexis 2013).  Wyo. Stat. Ann. § 20-2-308(a) (LexisNexis 2013) states that "[n]o order establishing or modifying a child support obligation shall be entered unless financial affidavits on a form approved by the Wyoming supreme court which fully discloses the financial status of the parties have been filed, or the court has held a hearing and testimony has been received."

[¶26]  We addressed the issue of determining the proper of amount of child support in a default situation in *Noonan,* ¶ 8, 122 P.3d at 966:

> While we understand that, in a default situation, it may be difficult or even impossible to obtain the financial affidavit of the defaulted party, the obligation remains for the non-defaulting party to file such affidavit, and the obligation remains for the district court to obtain sufficient financial evidence of both parties' income to make factual determinations, and to comply with the presumptive child support guidelines found in Wyo. Stat. Ann. § 20–2–304 (LexisNexis 2005), or to determine whether to deviate from those guidelines, as allowed by Wyo. Stat. Ann. § 20–2–307 (Lexis Nexis 2005).

[¶27]  The district court stated at the hearing:  "It's not clear to me what the parties' incomes are.  So I would like both parties to submit financial affidavits within five days, and I'll determine child support."  The district court also reiterated later that Mother was supposed to submit a financial affidavit.  Father submitted his financial affidavit on January 22, 2013, but Mother did not submit an affidavit.

9

[¶28] On January 30, 2013, the district court entered an Order Modifying Custody and Support. The order used a Supreme Court form available to pro se litigants which includes various alternatives to check and blanks to be filled in by the judge. The district court instructed Father to complete the form in accordance with its ruling, but to leave the child support portion blank. The order entered by the district court stated Father's net monthly income but the blanks for Mother's net monthly income, the total child support obligation of both parents, and the presumptive child support obligation for each parent are blank. The district court filled in the child support amount due from mother and stated it was the presumptive amount calculated using an affidavit of indigency filed by Mother before the default hearing.

[¶29] Mother does not claim the district court's calculation of the child support amount was incorrect in light of the information it had. Instead, she faults the district for failing to obtain a financial affidavit from her or set forth the presumptive child support amount. *Noonan,* ¶ 8, 122 P.3d at 966, recognized that it may be difficult to obtain the statutory financial affidavit from a defaulting party, but directed the district court to "obtain sufficient financial evidence of both parties' income to make factual determinations, and to comply with the presumptive child support guidelines." In this case, Mother appeared at the default hearing and the district court ordered her to submit a financial affidavit, which she did not do. Consequently, in fulfilling its obligation to obtain sufficient financial information, the district court used her affidavit of indigency, which showed her gross income. Under these circumstances, where Mother disregarded the district court's express order to provide a financial affidavit, we conclude the district court did not abuse its discretion by using the affidavit of indigency.

[¶30] Mother also claims the district court erred by failing to set out the presumptive child support amount. This is not correct. The district court specifically stated that it was ordering her to pay the presumptive child support amount as calculated with the guidelines. Although it would have been helpful if the district court had completed the blanks showing the income values it used to arrive at the presumptive amount, Mother does not claim the amount was incorrect. The district court's decision was reasonable under the circumstances; therefore, it did not abuse its discretion.

[¶31] Affirmed.