# IN THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 71

APRIL TERM, A.D. 2022

June 10, 2022

JESSICA J. HEHN,

**Appellant**
**(Petitioner),**

v.

S-21-0236

DAVID V. JOHNSON, II,

**Appellee**
**(Respondent).**

*Appeal from the District Court of Sheridan County*
*The Honorable William J. Edelman, Judge*

*Representing Appellant:*
> Stacy Michelle Kirven, Kirven Law, LLC, Sheridan, Wyoming.

*Representing Appellee:*
> No appearance.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]    Jessica Hehn (Mother) appeals the district court's default order establishing child custody, visitation, and support.  David Johnson, II (Father) did not file a brief on appeal.  We reverse and remand for further proceedings on visitation and child support.

### *ISSUE*

[¶2]    The dispositive issue is whether the district court abused its discretion in establishing visitation and child support.

### *FACTS*

[¶3]    The parties never married but are the biological parents of two minor children, born in 2014 and 2018.

[¶4]    In August 2019, Mother petitioned to establish custody, visitation, and child support.  She requested sole legal and physical custody of the children, as well as child support and medical support.  Father was properly served but failed to respond.  On Mother's request, the Clerk of District Court entered default against him.

[¶5]    In October, the court held a default hearing where Mother appeared in person with counsel.  Father, who was in custody on a pending criminal matter, also appeared in person but represented himself.  After summarizing the procedural posture of the case, the court asked Mother what orders she sought.

[¶6]    Mother requested primary custody, with "a slow, graduated" 15-month visitation schedule for Father.[1]   She also requested the court require Father to meet certain requirements during the graduated visitation period because his life had been unstable for

---

[1] Under Mother's proposed schedule, visitation would increase every three months:

- Months 1–3: supervised visitation for four hours every other Saturday.
- Months 4–6: monitored visitation for four hours every other Saturday.
- Months 7–9: visitation for eight hours every other Saturday.
- Months 10–12: visitation for eight hours every Saturday and eight hours every other Sunday, with no overnight visitation.
- Months 13–15: visitation for eight hours every Saturday, eight hours every other Sunday, and overnight visitation one weekend a month.

From then on, Father would have "a more standard visitation schedule[,]" including every other weekend and rotating holidays; summer visitation would remain the same.

1

several years.[2]  More specifically, she asserted he had been in and out of jail, had been using drugs, and had unstable housing and employment.  As to child support, she asserted Father had been a roofer for approximately 10 years and informed the court that she had researched the median wage of roofers in Wyoming.  The court interjected that Father would pay no child support while he was incarcerated and Mother clarified that she would try to impute such income to Father when he was released.

[¶7]   At the end of the hearing, the court said Mother's proposed order "sound[ed] relatively reasonable," but "there [was] no way to kick it into gear" until they knew what was going to happen in Father's criminal case.  The court thus intended to enter a temporary order.

[¶8]   Pursuant to the temporary order, which the court entered in mid-October 2019, Mother had sole physical custody of the children, the parties shared legal custody, and Father paid no child support.  In addition, the court ordered Father to inform Mother when he knew what was going to happen in his criminal case so she could request another hearing and the court could reevaluate custody, visitation, and support.

[¶9]   Shortly after the court issued the temporary order, Mother informed the court that Father had been sentenced to serve two to four years in prison.  She requested the court hold an expedited hearing and enter a permanent order before he was transported to Rawlins, Wyoming, to begin serving his sentence.  The court does not appear to have ruled on her request.

[¶10]  Approximately a year and a half later, in May 2021, Mother informed the court that Father had been released from prison in April.  She requested a default hearing so the court could enter a permanent order.

[¶11]  At the default hearing that August, Mother appeared in person with counsel.  Father also appeared in person but represented himself.  After summarizing the procedural posture of the case, the court turned the floor over to Mother to address her requests.  As before, she requested primary custody, with a graduated, 15-month visitation schedule for Father because the children did not know him.  As to child support, Mother asserted Father was a roofer by trade and currently worked for a roofing company.  She then explained that, in her default order, she calculated Father's net monthly income to be $1,404 based on the "mean wage for roofers."  She thus determined that his child support obligation was $363

---

[2] Mother requested the court require Father to fulfill the following requirements during the graduated visitation period: engage in at least 80 percent of visitation; not be under the influence of drugs or alcohol; submit to a breathalyzer or urinalysis before visitation if Mother had reasonable suspicion he was under the influence of drugs or alcohol; "live a law-abiding life"; not violate probation; "follow through with any treatment programs and aftercare recommendations"; "maintain steady employment"; and not change housing without good cause and advance notice to Mother.

per month and his retroactive child support obligation was $1,452. Mother expressly acknowledged, however, that Father could testify about his actual income.

[¶12] On the court's inquiry, Father confirmed he had reviewed Mother's proposed visitation order "a little bit" and thought 15 months of supervised visitation was excessive because he had been making an effort to see his children. Mother attempted to clarify that her proposed visitation order spanned 15 months total, with only three months of supervised visitation, followed by three months of monitored visitation. The court suggested they take a brief recess so Father could review Mother's proposed visitation schedule and ask her counsel any questions he had about it. The court added that, if Father agreed with the schedule, the court would sign it; if not, they would decide what to do next. After the recess, Father said he did not agree to six months of supervised or monitored visitation, as he had a stable home and frequently talked to his children.

[¶13] After Father explained his position, the court said it did not "really need evidence" because it understood Mother's request and the basis for it. The court proposed taking Mother's visitation schedule under advisement for modification because it agreed with Father that the transition to standard visitation should occur "a little faster." The court thus heard no evidence.

[¶14] In its default order, the court found it in the children's best interest for Mother and Father to have joint legal custody, Mother to have primary physical custody, and Father to have "reasonable, graduated visitation." Visitation would be as the parties decided was in the children's best interest. But if they could not agree then they must follow the court's schedule.

[¶15] Under the court's schedule, visitation would increase from limited supervised visitation to standard visitation in three months if Father met the requirements Mother requested, *see supra* n.2. For the first month, he would have three hours of supervised visitation every week. For the second month, he would have eight hours of visitation every week. From then on, he would have standard visitation, including every other weekend during the school year, rotating holidays, and most of summer break.

[¶16] As to child support, the court found Mother's net monthly income was $1,151, Father's net monthly income was "$1,404[] (imputed)," and their joint presumptive child support obligation was $839. Mother's share for primary custody was $377, Father's share for primary custody was $461, and his share applying the self-support reserve was $363. The court therefore ordered Father to pay $363 a month in child support, as well as $1,452 in retroactive support for April to July 2021.

3

[¶17] Mother challenges the court's visitation and child support determinations. We address her arguments in turn, reversing and remanding for further proceedings on both.[3]

### A. Child Custody – Visitation

[¶18] We review child custody determinations for an abuse of discretion. *Sears v. Sears*, 2021 WY 20, ¶ 13, 479 P.3d 767, 772 (Wyo. 2021) (citing *Johnson v. Johnson*, 2020 WY 18, ¶ 10, 458 P.3d 27, 32 (Wyo. 2020)). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Id.* (quoting *Johnson v. Clifford*, 2018 WY 59, ¶ 8, 418 P.3d 819, 822 (Wyo. 2018)). "A district court does not abuse its discretion if it could reasonably conclude as it did." *Id.* (quoting *Johnson*, ¶ 8, 418 P.3d at 822).

### i. Best Interests – Findings

[¶19] Mother complains that, in its default order, the court did not mention the best interest factors under Wyo. Stat. Ann. § 20-2-201(a), make any findings of fact about the children's best interest, or explain why it altered her proposed default order so significantly. Though Mother accurately characterizes what the court did not include in its default order, neither party requested specific findings pursuant to W.R.C.P. 52(a).[4]

---

[3] Mother summarily argues the district court's entry of the temporary order conflicts with our precedent. In *Womack v. Swan*, we recognized that "[i]n exercising its discretion to formulate parenting arrangements, there may be a circumstance for which a district court's sua sponte temporary order is a reasonable response to specific problems and needs in the fair administration of justice." *Womack v. Swan*, 2018 WY 27, ¶ 13, 413 P.3d 127, 134 (Wyo. 2018). For example, it may be appropriate to enter a brief temporary order while considering a petition to permanently change custody. *Id.* ¶¶ 12, 14, 413 P.3d at 134.

We opine the district court abused its discretion in entering a temporary order under these circumstances. After the 2019 default hearing, the district court, on its own motion, issued a temporary order as a sort of probationary custody arrangement while Father was in prison. That temporary order remained in place for nearly two years—from October 2019 until the court entered the final order in August 2021. The district court may have believed it to be in the children's best interest to award Mother sole physical custody while Father was incarcerated, thus shielding them from exposure to his imprisonment. But, by doing so, the court failed to ensure the children could begin building a relationship with him through, for example, telephone calls or letters and cards.

However, the remedy where a court abuses its discretion in entering a temporary order is to remand for the entry of a final one, *id.* ¶ 16, 413 P.3d at 135, and here a final order is already in place. We therefore limit our examination to whether the court abused its discretion in ordering visitation and child support.

[4] W.R.C.P. 52(a)(1)(A) provides:

4

[¶20]   "[A] party who fails to request findings of fact prior to trial cannot complain later of the absence of formal findings, including the absence of findings addressing the [best interest] factors enumerated in § 20-2-201(a)."  *JT v. KD*, 2008 WY 104, ¶ 15, 192 P.3d 969, 972 (Wyo. 2008) (citations omitted).  "While we encourage district courts to spell out the reasons for their conclusions, they are not required to do so unless a Rule 52 request is made."  *Id.* (citation omitted); *see also Castellow v. Pettengill*, 2021 WY 88, ¶ 10, 492 P.3d 894, 898 (Wyo. 2021); *Kimzey v. Kimzey*, 2020 WY 52, ¶ 38 n.2, 461 P.3d 1229, 1241 n.2 (Wyo. 2020).  Because she did not request specific findings, Mother cannot be heard to complain on appeal that the district court did not adequately address the statutory best interest factors or more fully explain its reasoning.  *See JT*, ¶ 15, 192 P.3d at 972.

### ii. Best Interests – Evidentiary Basis

[¶21]   Mother next argues the court erred because it had no evidentiary basis to determine what visitation schedule was in the children's best interest.  She asserts that, when it became apparent that Father disagreed with her proposed default order, the court should have set the matter for an evidentiary trial.  We conclude the court erred in ruling on visitation without any evidentiary basis to determine the children's best interest.

[¶22]   In *Noonan*, we explained that "[a]n entry of default prevents the defaulted party from appearing and presenting evidence; it does not relieve the non-defaulting party of its obligation to produce an evidentiary basis for the desired relief, nor does it relieve the district court of its obligation to base its findings of fact upon such evidence."  *Noonan v. Noonan*, 2005 WY 145, ¶ 7, 122 P.3d 964, 966 (Wyo. 2005) (citing *Spitzer v. Spitzer*, 777 P.2d 587, 592–93 (Wyo. 1989)).  The district court in *Noonan* entered a default divorce decree awarding joint legal and split physical custody of the children, establishing a detailed visitation schedule, and ordering Husband to pay child support.  *Id.* ¶ 1, 122 P.3d at 964.  But it held no hearing and had no evidentiary basis to enter such decree.  *Id.*  Mother moved to set aside the default divorce decree, but the court denied her motion.  *Id.* ¶¶ 1, 4, 122 P.3d at 964, 965.  We reversed, concluding in relevant part that W.R.C.P. 55 (the rule

---

(a) General and Special Findings by Court.

(1) Trials by the Court or Advisory Jury.  Upon the trial of questions of fact by the court, or with an advisory jury, it shall not be necessary for the court to state its findings, except generally for the plaintiff or defendant.  Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56 or any other motion except as provided in Rule 52(c).

(A) Requests for Written Findings.  If one of the parties requests it before the introduction of any evidence, with the view of excepting to the decision of the court upon the questions of law involved in the trial, the court shall state in writing its special findings of fact separately from its conclusions of law[.]

on entry of default and default judgment) required the court "to base its findings of fact regarding property distribution, child custody, visitation, and support on some evidence in the record." *Id.* ¶¶ 7, 12, 122 P.3d at 965, 967.

[¶23]  The same principles apply to these default proceedings to establish child custody, visitation, and support.  Consequently, entry of default prevented Father (the defaulted party) from appearing and presenting evidence.  *See id.* ¶ 7, 122 P.3d at 966.  It did not relieve Mother (the non-defaulting party) of her obligation to produce an evidentiary basis for the relief she requested.  *See id.*  Nor did it relieve the district court of its obligation to base its findings of fact on such evidence.  *See id.*

[¶24]  Though the court purported to have based its visitation decision on the best interest of the children, it had before it only the parties' assertions.  It heard no evidence before entering its default order.  It therefore had no evidentiary basis to determine whether it was in the children's best interest for Father to have a slow, graduated 15-month visitation schedule, as Mother requested, or a much quicker transition to standard visitation as Father requested and the court ordered.  Similarly, the court had no evidentiary basis to determine whether it was in the children's best interest for Father to have visitation every other weekend during summer break, as Mother requested, or for most of the summer, as ordered.

[¶25]  We therefore conclude the court abused its discretion in ordering visitation and remand for evidentiary proceedings to determine what visitation schedule is in the children's best interest.

### B.    Child Support – Evidentiary Basis

[¶26]  Mother argues the court abused its discretion by failing to comply with Wyo. Stat. Ann. § 20-2-308, which requires the district court to obtain sufficient financial information from each party in the form of a financial affidavit and/or testimony before determining their income and calculating child support, *see infra* ¶ 29.  This case presents a conundrum because Mother, the non-defaulting party, got the precise child support relief she requested and never objected to the court's failure to comply with § 20-2-308.  After reviewing the record in light of the applicable child support statutes and our precedent, we conclude that the court abused its discretion by calculating child support without having a sufficient evidentiary basis to determine Father's income even though Mother received the relief she requested and failed to object.

[¶27]  "Child support determinations are left to the court's sound discretion and will not be disturbed on appeal absent a clear abuse." *Snowden v. Jaure*, 2021 WY 103, ¶ 11, 495 P.3d 882, 884 (Wyo. 2021) (citation omitted).  Notably, however, the court's discretion is necessarily "guided by the applicable statutory provisions." *Johnson*, ¶ 33, 458 P.3d at 38 (citation omitted).

6

[¶28]   The Child Support Act, Wyo. Stat. Ann. §§ 20-2-301 through -316, governs child support.   Section 20-2-308(a) unequivocally states: "No order establishing or modifying a child support obligation shall be entered unless financial affidavits on a form approved by the Wyoming supreme court which fully discloses the financial status of the parties have been filed, or the court has held a hearing and testimony has been received."   Wyo. Stat. Ann. § 20-2-308(a) (LexisNexis 2021).   Subsection (b) addresses the documentation required to support a financial affidavit:

> Financial affidavits of the parties shall be supported with documentation of both current and past earnings.   Suitable documentation of current earnings includes but is not limited to pay stubs, employer statements, or receipts and expenses if self-employed.   Documentation of current earnings shall be supplemented with copies of the most recent tax return to provide verification of earnings over a longer period.

Wyo. Stat. Ann. § 20-2-308(b).

[¶29]   We have described § 20-2-308's requirements as mandatory and explained that the statute "requires the district court to ensure the parties provide sufficient financial information, in the form of proper financial affidavits and/or trial evidence, before it makes a child support determination."   *Lemus v. Martinez*, 2019 WY 52, ¶¶ 21, 26, 441 P.3d 831, 836, 837 (Wyo. 2019) (citations omitted); *see also JAG v. State, Dep't of Fam. Servs., Div. of Pub. Assistance & Soc. Servs.*, 2002 WY 158, ¶ 17, 56 P.3d 1016, 1021 (Wyo. 2002) ("Wyoming statutes require that an evidentiary record be made in the course of establishing child support[.]" (citing Wyo. Stat. Ann. § 20-2-308)); *Peak v. Peak*, 2016 WY 109, ¶ 9, 383 P.3d 1084, 1088 (Wyo. 2016) (noting that in default divorce proceedings "the district court must obtain an evidentiary basis for its findings regarding property distribution, child custody and visitation, and child support" (citations omitted)).[5]

[¶30]   In *Noonan*, we addressed child support in default situations:

---

[5] The statutory requirements may be waived in certain circumstances not present here.   *See, e.g.*, *Long v. Long*, 2018 WY 26, ¶¶ 28–30, 413 P.3d 117, 126–27 (Wyo. 2018) (rejecting husband's complaint about the district court's failure to comply with § 20-2-308 where he disregarded his statutory obligation to provide a financial affidavit, the parties agreed to the child support amount he would pay, and the court had husband and wife's 2013 and 2014 federal income tax returns showing husband's income during those years); *Verheydt v. Verheydt*, 2013 WY 25, ¶¶ 7–15, 34, 295 P.3d 1245, 1247–49, 1253 (Wyo. 2013) (concluding husband waived any objection to the district court's failure to comply with § 20-2-308 where he did not file a financial affidavit but the parties reached a settlement agreement on most aspects of child support and agreed to have the court resolve the remaining child support issues based on the pleadings and argument).   Though Mother overstates the extent to which she insisted the court must comply with § 20-2-308, any failure on her part in that regard did not relieve the district court of its statutory obligation to ensure that an evidentiary record supported its child support determination.   *See JAG*, ¶ 17, 56 P.3d at 1021; *Peak*, ¶ 9, 383 P.3d at 1088.

> While we understand that, in a default situation, it may be difficult or even impossible to obtain the financial affidavit of the defaulted party, the obligation remains for the non-defaulting party to file such affidavit, and the obligation remains for the district court to obtain sufficient financial evidence of both parties' income to make factual determinations, and to comply with the presumptive child support guidelines found in Wyo. Stat. Ann. § 20-2-304 (LexisNexis 2005), or to determine whether to deviate from those guidelines, as allowed by Wyo. Stat. Ann. § 20-2-307 (LexisNexis 2005).

*Noonan*, ¶ 8, 122 P.3d at 966 (reversing because "[t]hat did not happen in this case").[6]

[¶31]   In *Brush v. Davis*, 2013 WY 161, 315 P.3d 648 (Wyo. 2013), the district court did precisely what *Noonan* contemplates in a default situation where both parties attend the default hearing.  The father in *Brush* filed a petition to modify custody and support.  *Id.* ¶¶ 4, 5, 315 P.3d at 650, 651.  After the mother defaulted, the court held a hearing where both parties appeared without counsel.  *Id.* ¶¶ 5, 6, 315 P.3d at 651.  After the hearing, the district court decided to award Father custody but asked each parent to submit a financial affidavit because their respective incomes were unclear.  *Id.* ¶ 7, 315 P.3d at 651.  The father filed a financial affidavit but the mother did not, so the court used her affidavit of indigency to calculate her income.  *Id.*  We concluded the district court did not abuse its discretion by doing so under the circumstances.  *Id.* ¶ 29, 315 P.3d at 656.

[¶32]   The district court made no such effort in this case.  The record reflects that, even though Father regularly attended hearings and represented himself, the court never asked him to provide a financial affidavit or required him to testify about his income.  And Mother did not testify or present any evidence about Father's income; her counsel made assertions

---

[6] In *Lemus*, we identified some options that are available to the district court "[i]f a party fails to comply with the statute":

> (1) the court may find adequate information to calculate income from evidence provided by the other parties; (2) the court may order the filing of a complete financial affidavit and enforce that order by contempt; and/or (3) the court may award attorney fees to the GAL and opposing side for the costs of obtaining complete financial information. *See, e.g., Long v. Long*, 2018 WY 26, ¶ 30, 413 P.3d 117, 126–27 (Wyo. 2018) (other evidence established the husband's income); *Walker v. Walker*, 2013 WY 132, ¶ 39, 311 P.3d 170, 178 (Wyo. 2013) (courts have authority to enforce their orders through contempt sanctions); W.R.C.P. 37 (sanctions for failure to comply with discovery obligations).

*Lemus*, ¶ 26 n.6, 441 P.3d at 837 n.6.

about his past and current employment as a roofer. Consequently, there was insufficient evidence about Father's income for the court to calculate child support.[7] *Cf. Peak*, ¶¶ 1, 4, 22–23, 383 P.3d at 1086, 1087, 1091 (distinguishing *Noonan* because, though father (the defaulting party) failed to file a financial affidavit, the court held a hearing where it received sufficient evidence about his finances from mother, including pay stubs, financial statements, and federal income tax returns).

[¶33] The court should have tried to obtain information about Father's income directly from him, in the form of a financial affidavit and/or testimony.[8] *See Brush*, ¶ 7, 315 P.3d at 651. If the court could not obtain financial information from Father it then may have been appropriate to determine his income based on some other evidence. *See Lemus*, ¶ 26 n.6, 441 P.3d at 837 n.6; *Fleet v. Guyette*, 2020 WY 78, ¶ 37, 466 P.3d 812, 822–23 (Wyo. 2020) (finding no abuse of discretion where Father failed to submit the required financial affidavit and the court relied on an affidavit from Mother's attorney who investigated his income); *Brush*, ¶ 29, 315 P.3d at 656.

[¶34] The district court abused its discretion by determining Father's income without sufficient evidentiary support.

## CONCLUSION

[¶35] The district court abused its discretion when it determined visitation and child support without a sufficient evidentiary basis. We therefore reverse and remand for further proceedings consistent with this opinion.

---

[7] To the extent the court purported to impute income to Father, it did not have a sufficient evidentiary basis to do so. *See* Wyo. Stat. Ann. §§ 20-2-303(a)(ii) (defining "income" to include "potential income of parents who are voluntarily unemployed or underemployed"), 20-2-307(b)(xi) (identifying factors a court "shall consider" in deciding whether to impute income to a parent who is voluntarily unemployed or underemployed); *cf. Snowden*, ¶ 19, 495 P.3d at 886 (concluding the district court's decision to impute income to Mother was reasonable based on Mother's testimony and the other evidence at trial). There was no evidence Father was voluntarily unemployed or underemployed. *See* Wyo. Stat. Ann. § 20-2-303(a)(ii). By Mother's counsel's assertion he "has always been a roofer by trade" and currently worked for a roofing company.

[8] We acknowledge that Father had been incarcerated prior to his release from prison in April 2021 and, thus, any financial affidavit would have provided limited information about his earnings in the past two years. But the default hearing did not occur until August 2021, four months after his release from prison, and Mother indicated he was currently employed, so a financial affidavit or testimony could have provided useful information in calculating his present income and net income.