KAUTZ, Justice.
[¶1] The appellee, Satin Marie Long (Wife), filed for divorce from the appellant, Clayton Eugene Long (Husband). Before Wife filed for divorce, the parties executed a Stipulated Judgment and Decree of Divorce (stipulated decree) that established property distribution, child support, child custody and visitation, and alimony. Wife submitted the stipulated decree to the district court, and following a hearing, the court determined the stipulation was enforceable and entered it as the final decree of divorce. Husband appeals the district court decision for various reasons. We affirm in part and remand in part.
ISSUES
[¶2] Husband raises five issues for our consideration:
1. Whether the District Court abused its discretion by ordering that the Parties'
*121 Stipulated Judgment and Decree of Divorce was supported by consideration, and not unconscionable.
2. Whether the District Court abused its discretion by finding that the appellant did not sign the Parties' Stipulated Judgment and Decree of Divorce while incompetent, or while under duress, coercion, or bad faith.
3. Whether the District Court abused its discretion by finding the Parties' Stipulated Judgment and Decree of Divorce was enforceable when there were no findings supporting the appellee being awarded sole custody.
4. Whether the District Court abused its discretion by finding the Parties' Stipulated Judgment and Decree of Divorce was enforceable despite the lack of findings regarding presumptive child support.
5. Whether the District Court abused its discretion by finding the Parties' Stipulated Judgment and Decree of Divorce was enforceable despite the lack of findings regarding alimony.
FACTS
[¶3] Husband and Wife married on August 17, 1993. The couple had four children: JL was born in 1995; BL was born in 1997; KL was born in 2006; and HL was born in 2010. Although Wife became a licensed registered nurse in 2009, she stayed at home to raise the children throughout most of the marriage. Husband worked as a tool fisher, and from 2006 through 2015 his annual earnings ranged from $155,063 to $230,260. Husband was laid-off and began collecting unemployment in September 2015, after the couple had separated and filed for divorce.
[¶4] The couple began experiencing significant marital difficulties in August 2014, and Husband moved out of the home in April 2015. Husband began to see a counselor in an effort to reconcile the marriage, and he believed that Wife was also seeing a counselor. Wife, however, denied seeing a counselor and told Husband that she wanted a divorce. In response to the divorce discussions, Husband would drink more alcohol than was normal. Husband sent Wife text messages informing her that if she wanted a divorce, she should get a lawyer, start the paperwork, and put whatever conditions she wanted in the paperwork, including alimony.
[¶5] On August 7, 2015, Wife presented Husband with the stipulated decree prepared by her attorney. The stipulated decree awarded Wife sole legal custody of the three minor children, and granted Husband reasonable visitation with the children at Wife's discretion. Husband would pay Wife $3,025 a month in child support and $3,000 a month in alimony. In the property distribution, Wife would keep the marital home, 100% of Husband's 401(k), three vehicles, an all-terrain vehicle, several firearms, two bank accounts held with the children, and the Disney Vacation Club accounts. Husband would receive the camper and the contents within it and several firearms. Wife would assume the home mortgage debt and the debt to Herberger's, while Husband would assume the combined loans from Uinta Bank, the loan from Trona Valley FCU, the balance on the Cabela's Club Visa card, the debt to Main One Financial, Wells Fargo Financial, and Bank of the West, the taxes and outstanding balances on the Disney Vacation Club accounts, and all medical and dental debts incurred before the date of the stipulated decree. Additionally, the stipulated decree required that Husband maintain a life insurance policy with a minimum $500,000 death benefit with Wife named as the primary beneficiary and the minor children as the secondary beneficiaries.
[¶6] While there is some dispute about the conversation that took place while the couple discussed the stipulated decree, there is no dispute that Husband let Wife explain the content of the document to him instead of reading it for himself. Husband explained he believed the document was prepared by Wife's "counselor" and that if he signed it, he and Wife would reconcile. Wife admitted that she said she would have dinner or lunch with Husband, but denied that she told Husband that this was an attempt to reconcile. Husband and Wife both signed the stipulated decree before a notary public that same day.
*122 [¶7] For unknown reasons, Wife delayed filing a complaint for divorce until September 23, 2015. Nothing in the record shows that Husband and Wife had temporarily reconciled or otherwise resolved their issues. Husband filed his answer and counterclaim, and Wife responded and submitted the stipulated decree to the district court. Because Husband's answer and counterclaim were contrary to the stipulated decree, the district court informed the parties it would not approve the stipulated decree until its concerns regarding the inconsistencies were resolved. Husband then filed an objection to the entry of the stipulated decree. He argued it should not be enforced because: 1) he was intoxicated at the time he signed the document; 2) he has a history of difficulty with reading comprehension and he did not understand he was signing a divorce decree; 3) he was coerced into signing the document under the belief that he and Wife would reconcile if he signed it; 4) the property distribution in the decree is unconscionable and inequitable; 5) the debt division was inequitable; 6) the $3,000 per month alimony payments are inequitable; 7) the child support calculation is based on now inaccurate income calculations; and 8) it is not in the best interests of the children for Wife to have sole legal custody of the minor children.
[¶8] The district court held a hearing on the matter and heard testimony from Husband, Wife, the notary public, and some family members. The district court concluded the stipulated decree between the parties was an enforceable, non-revocable contract that was supported by consideration. Further, the court concluded Wife did not coerce Husband into signing the agreement, Husband was not under the influence of alcohol to the extent the contract should be voided, and Husband was competent to enter into the contract despite his struggles with reading and comprehension. While the court found the provisions in the stipulated decree unreasonably favored Wife, it did not find that Husband lacked a meaningful choice in approving the stipulated decree and, therefore, the agreement was not unconscionable. Based on these findings, the district court entered the stipulated decree as the final divorce decree, with the exception of child support. Instead, the court continued an earlier circuit court order which required Husband to pay $2,500 per month in child support and $500 per month toward his child support arrearages. Husband filed a timely notice of appeal.
DISCUSSION
Enforceability of the Stipulated Judgment and Decree of Divorce
[¶9] Husband argues the district court erred in concluding the stipulated decree signed by the parties is an enforceable contract. Husband asserts the stipulation is not a valid contract because it is not supported by consideration and the agreement is unconscionable. We will discuss each of these issues in turn.
Consideration
[¶10] In the district court proceedings, Husband argued, as he does here, that the stipulated decree is not enforceable because it is not supported by consideration. The district court disagreed and concluded that the settlement of the claims between Husband and Wife is sufficient consideration to form a binding contract. We agree.
[¶11] Husband's argument on appeal is that, since the complaint for divorce had not yet been filed at the time they signed the stipulated decree, there were no claims to be settled between Husband and Wife and, thus, no consideration. The parties do not disagree about the facts pertaining to the consideration issue. Consequently, we are presented solely with a question of law which we review de novo . Redland v. Redland , 2012 WY 148, ¶ 48, 288 P.3d 1173, 1185 (Wyo. 2012). Without explicitly characterizing it as such, Husband appears to be treating the stipulated decree as a postnuptial agreement. As this Court has previously recognized, an antenuptial or prenuptial agreement is "a contract entered into between two people in contemplation and consideration of marriage. The marriage provides the requisite consideration to bind both parties." Combs v. Sherry-Combs , 865 P.2d 50, 53 (Wyo. 1993). A postnuptial agreement, however, "is created when the parties execute an agreement following *123 the marriage ceremony, even if the agreement is negotiated and drafted prior to the marriage." Id . Unlike an antenuptial agreement, the marriage itself cannot provide adequate consideration in a postnuptial agreement, as the marriage has already occurred. Instead, there must be an exchange of "other identifiable consideration." Id . at 54-55.
[¶12] While Husband and Wife certainly drafted, considered, and signed the stipulated decree after they were married, this agreement is not an unenforceable postnuptial agreement. The parties' marriage cannot supply consideration for the agreement, but settlement of their marital dispute can. As we pointed out in Combs , "[a] postnuptial agreement must be distinguished from a separation agreement. A separation agreement, entered into by the parties in anticipation of immediate separation or after separation, is favored in the law." Id . at 54. The settlement of claims between parties is sufficient consideration to create a valid separation agreement. Lipps v. Loyd , 967 P.2d 558, 561 (Wyo. 1998) (citing Kinnison v. Kinnison , 627 P.2d 594, 596 (Wyo. 1981) ). Here, Husband and Wife had been separated for several months and the stipulated decree amounted to a settlement of all the claims outstanding between the two. Thus, the agreement was supported by consideration and the requirements of a valid contract are present.
[¶13] The fact that the agreement was reached before the complaint for divorce had been filed does not render the settlement of outstanding claims inadequate consideration. Husband and Wife had been separated for some time and Wife testified she repeatedly told Husband that she wanted a divorce. The text messages between Husband and Wife further demonstrate Husband was aware that Wife was seeking a divorce, and he told her to have the divorce paperwork created to Wife's satisfaction and he would sign it. Courts have long favored property settlement agreements the spouses have entered into prior to the commencement of divorce proceedings, and those agreements are generally recognized and given force and effect in the final divorce decree. Lipps , 967 P.2d at 560 ; David v. David , 724 P.2d 1141, 1143 (Wyo. 1986) ; Prentice v. Prentice , 568 P.2d 883, 886 (Wyo. 1977) ; Clauss v. Clauss , 459 P.2d 369, 375 (Wyo. 1969) ; Beard v. Beard , 368 P.2d 953, 955 (Wyo. 1962). The district court correctly found the stipulated decree was a valid agreement between Husband and Wife that was supported by consideration.
Unconscionability
[¶14] Husband also argues that the stipulated decree should not be enforced because it is unconscionable. The district court concluded that, while the stipulated decree did unreasonably favor Wife, Husband did not lack a meaningful choice in agreeing to the stipulated decree and that he understood it would become effective if the parties divorced. Husband argues the district court failed to consider that Husband believed he had to sign the agreement in order to reunite with Wife and, thus, he did not have a meaningful choice with respect to the terms of the contract. Whether a contract is unconscionable is a question of law we review de novo . Kindred Healthcare Operating, Inc. v. Boyd , 2017 WY 122, ¶ 12, 403 P.3d 1014, 1019 (Wyo. 2017).
[¶15] We do not lightly interfere with the freedom of contract and, therefore, approach claims that a contract is unconscionable cautiously. Id. , ¶ 30, 403 P.3d at 1022 (citing Pittard v. Great Lakes Aviation , 2007 WY 64, ¶ 33, 156 P.3d 964, 974 (Wyo. 2007) ; Roussalis v. Wyo. Med. Ctr., Inc. , 4 P.3d 209, 247 (Wyo. 2000) ). When determining whether an agreement is unconscionable, we must look at the circumstances at the time the contract was made, and not rely on hindsight. Id . Courts balance two factors when determining whether a contract is unconscionable:
In deciding whether a contract is unconscionable, we consider the claim from two perspectives. First, we consider whether the contract provisions unreasonably favor one party over the other. Second, we consider whether the latter party lacked a meaningful choice in entering into the contract. The first perspective concerns the contract's substantive unconscionability. The second concerns its procedural unconscionability.
*124 As noted in Roussalis , 4 P.3d at 246, most courts require evidence of both and take a balancing approach in applying them. In other words, both the absence of meaningful choice and the presence of contract provisions unreasonably favorable to one party must be found in order to sustain a claim that a contract is unconscionable.
Pittard , ¶ 34, 156 P.3d at 974.
[¶16] As noted above, the district court concluded the stipulated decree unreasonably favored Wife. Husband, obviously, does not challenge that finding by the court, and Wife does not appear to necessarily dispute it, acknowledging "[t]he provisions of the [a]greement favor [Wife]." Because neither of the parties take issue with this part of the district court's decision, and it is not dispositive to the issue, we will not discuss this factor further and will move on to the question of procedural unconscionability.
[¶17] We consider several factors when determining whether a contract is procedurally unconscionable:
[D]eprivation of meaningful choice as to whether to enter into the contract, compulsion to accept terms, opportunity for meaningful negotiation, such gross inequality of bargaining power that negotiations were not possible, characteristics of alleged aggrieved party (underprivileged, uneducated, illiterate, easily taken advantage of), and surprise by fine print or concealed terms.
Pittard , ¶ 35, 156 P.3d at 974.
[¶18] Considering these factors in conjunction with the information contained in the record, we cannot conclude that Husband did not have a meaningful choice when he agreed to the stipulated decree. While the decree was drafted by Wife's attorney, Husband and Wife had engaged in communication regarding the divorce and Husband had directed Wife to "put whatever you want in the divorce papers" including alimony. When Wife presented Husband with the stipulated decree, the two spent approximately twenty to thirty minutes together discussing the contents of the document. Husband testified that he did not read the document and instead relied on Wife's explanation of the terms. Of significance, Husband does not allege that Wife explained the terms of the document inaccurately; in fact, Husband did not testify about the substance of the conversation with his Wife about the document other than he believed if he signed it the two would reconcile. Wife testified that they went through the document page by page and Husband could cross out any provisions he did not approve of. He did not express dissatisfaction with any of the provisions.
[¶19] Husband testified that he is dyslexic and it is difficult for him to comprehend documents. However, he received his G.E.D. and was a supervisor at his job. Further, Wife testified that Husband reviewed and signed many documents throughout their marriage and, while it may have caused him to struggle momentarily, his dyslexia never prevented him from understanding the substance of any document. Husband's counselor testified that Husband's written correspondence contained spelling and grammatical errors, but he never mentioned comprehension issues and the counselor was never in a position to notice if reading comprehension was problematic for Husband. The counselor also testified that Husband told her that Wife had asked him to sign a document that included child support and division of property, and the counselor recommended that Husband seek the guidance of an attorney.
[¶20] While there is an abundance of information in the record demonstrating that Husband desperately sought to reconcile with Wife, this does not demonstrate he was deprived of a meaningful choice on whether to enter into the contract. Husband could have sought the advice of an attorney before signing the stipulated decree, but opted not to do so. Wife explained the terms of the agreement, and Husband did not express any discontent with any of the terms. Husband told Wife through text messages to begin the divorce proceedings and he would agree to whatever terms she wanted. Husband signed the stipulated decree with the hope that he and Wife would reconcile, but was also aware that the agreement would go into effect in the event of the divorce. As we have previously recognized, all contracts come with *125 some element of risk, and courts should not aid those who have agreed to an unwise bargain. Matter of Frederick's Estate , 599 P.2d 550, 556 (Wyo. 1979). Husband agreed to an unwise bargain that significantly favored Wife; however, the evidence shows he made that bargain freely and the contract is not unconscionable.
Distribution of Property and Debts
[¶21] Husband argues the district court abused its discretion when it enforced the stipulated decree with respect to the property and debt distribution because the distribution was not "just and equitable" as required by Wyo. Stat. Ann. § 20-2-114(a) (LexisNexis 2017). This statute states in relevant part:
(a) Except as provided in subsection (b) of this section, in granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and children.
[¶22] District courts are afforded great discretion when dividing marital property, and may consider the fault of the parties and all other facts and circumstances surrounding the dissolution of the marriage when dividing the assets and debts. Kummerfeld v. Kummerfeld , 2013 WY 112, ¶ 10, 309 P.3d 822, 825 (Wyo. 2013). Consequently, "[a] just and equitable division of property is just as likely not to be equal." Id . A court abuses its discretion when "the property disposition shocks the conscience of this court and appears to be so unfair and inequitable that reasonable people cannot abide it." Id ., ¶ 7, 309 P.3d at 824 (quoting Rosendahl v. Rosendahl , 2011 WY 162, ¶ 3, 267 P.3d 557, 559 (Wyo. 2011) ); see also David v. David , 724 P.2d 1141, 1143 (Wyo. 1986).
[¶23] As already discussed, property settlement agreements are favored in the law and are generally given force and effect in the divorce decree. Lipps , 967 P.2d at 560. However, the agreement does not negate a court's statutory duty to dispose of the property in a "just and equitable" manner. David , 724 P.2d at 1143. Under the facts and circumstances of this case, we cannot find that the district court's decision to incorporate the agreed upon property and debt distribution into the decree shocks the conscience of this Court. The agreed upon distribution was lop-sided, but nonetheless agreed to by the parties and therefore weighs heavily in the analysis. At the time of the agreement, Husband was making a generous salary at this job, and Wife presented evidence that Husband encouraged Wife to put whatever terms she saw fit in the divorce documents. Under these circumstances, the district court did not abuse its discretion in accepting the parties' stipulation as a fair and just distribution of the property and debts.
Child Custody and Visitation
[¶24] Husband argues the district court abused its discretion in enforcing the stipulated decree with respect to child custody and visitation without considering the best interests of the children. If parties have made an agreement regarding child custody, a district court need not conduct an evidentiary hearing to determine the best interests of the child. Esquibel v. Esquibel , 917 P.2d 1150, 1151 (Wyo. 1996). However, a district court "is not bound to accept a stipulation of the parties and [ ] the court's major consideration in determining custody of minor children is the welfare of those children." Eickbush v. Eickbush , 2007 WY 179, ¶ 10, 171 P.3d 509, 511 (Wyo. 2007). Therefore, a district court can enforce a stipulation regarding child custody so long as that stipulation is in the best interests of the children.
[¶25] The district court did not make any findings about the best interests of the children. Instead, the court's focus was whether the stipulation was enforceable and its analysis in the order was based solely on contract principles. Wife testified Husband had aggression and anger issues, he had never taken care of the children, and Wife had been a stay-at-home mother during the marriage. These facts may certainly support a conclusion that it is in the children's best interests for Wife to have sole custody. However, the *126 court still had a duty to consider the best interests of the children before accepting the parties' stipulation on the matter. We remand the custody determination to the district court for consideration of the best interests of the children.
[¶26] Furthermore, the provision regarding visitation contained in the stipulated decree does not meet the requirements of Wyo. Stat. Ann. § 20-2-202 (Lexis Nexis 2017). That statute states in relevant part: "(a) The court may order visitation it deems in the best interests of each child and the court shall: (i) Order visitation in enough detail to promote understanding and compliance[.]"
[¶27] The visitation provision in the stipulated decree simply states: "Father shall have reasonable visitation rights with the minor children at Mother's discretion." This is insufficient for the parents to "each understand their obligations, and so the decree may be enforced by contempt sanctions should that regrettably become necessary." IC v. DW , 2015 WY 135, ¶ 21, 360 P.3d 999, 1005 (Wyo. 2015). A proper visitation provision should specify which weekends, holidays, and other days Husband is allowed visitation; details concerning overnight visits and issues relating to transportation between Wife and Husband; and specify how the visitation schedule will change as the children get older. See id . Therefore, we also remand for the district court to enter an appropriate visitation schedule.
Child Support
[¶28] In the stipulated decree, the parties agreed Husband would pay $3,025 per month in child support. In October 2015, Wife filed an affidavit explaining the stipulated child support amount was determined using the presumptive child support calculations found in Wyo. Stat. Ann. § 20-2-304 (LexisNexis 2017), allocating minimum wage to Wife, as she was not working, and $14,997.18 in monthly income to Husband based on a paystub from July 2015. Shortly thereafter, Wife requested from the circuit court an order of protection from Husband. The circuit court granted the request and entered a temporary order requiring Husband to pay a total of $4,000 per month in child support and alimony. The circuit court reached the $4,000 amount by using Wife's calculations in the affidavit, deviated downward to account for Wife's potential future earnings, and then added an amount equal to minimum wage for alimony. The circuit court later modified Husband's child support obligation to $2,500 per month and an additional $500 per month for child support arrearages. The order makes no mention of alimony and gives no explanation as to how the circuit court reached the new child support obligation.
[¶29] The district court entered the stipulated decree in its entirety except for child support. Instead of ordering the $3,025 that had been agreed to by the parties, the district court continued the circuit court's order requiring Husband to pay the $2,500 per month in child support and the additional $500 per month for arrearages. Husband never filed a financial affidavit in either the circuit or district court. Husband argues the district court abused its discretion in ordering child support without his financial affidavit.
[¶30] Wyo. Stat. Ann. § 20-2-308(a) (LexisNexis 2017) states: "No order establishing or modifying a child support obligation shall be entered unless financial affidavits on a form approved by the Wyoming supreme court which fully discloses the financial status of the parties have been filed, or the court has held a hearing and testimony has been received." The language of the statute itself does not require a financial affidavit if the district court holds a hearing and otherwise receives the necessary information. Peak v. Peak , 2016 WY 109, ¶ 20, 383 P.3d 1084, 1091 (Wyo. 2016). Wife provided a financial affidavit demonstrating her income and, while Husband did not, the district court had Husband and Wife's 2013 and 2014 federal income tax returns showing Husband's income during those years. Therefore, the district court was privy to information regarding Husband's finances that would allow it to reach a decision about child support. Husband seems to argue that a financial affidavit would have disclosed that, at the time the district court entered its order, he was making significantly less income because he had *127 been laid off from his job. However, we will not allow Husband to disregard a statutory requirement (financial affidavit) and then complain that his failure to comply with the requirement deprived him of an accurate child support calculation. See id. , ¶ 24, 383 P.3d at 1091.
[¶31] Although Husband's failure to file a financial affidavit does not render the stipulated decree problematic with respect to child support, the fact that the district court did not acknowledge the presumptive child support amount does. Wyoming law requires: "Every order or decree providing for the support of a child shall set forth the presumptive child support amount and shall state whether the order or decree departs from that amount." Wyo. Stat. Ann. § 20-2-307(a) (LexisNexis 2017). The district court's order enforcing the stipulated decree does not state the presumptive child support amount and it does not explain why it deviated from the amount (if it did). Additionally, we cannot rely on the circuit court's order originally establishing this amount. Not only does that order also fail to state the presumptive amount, it does not give any indication as to how the circuit court reached the $2,500 per month calculation. For this reason, we remand for the district court to consider the presumptive child support and whether it should deviate from that amount.
Alimony
[¶32] Husband argues the district court abused its discretion when it ordered alimony without making any findings regarding Husband's ability to pay alimony or the reasonableness of the amount in the stipulated decree. Section 20-2-114 states in relevant part: "The court may decree to either party reasonable alimony out of the estate of the other having regard for the other's ability to pay and may order so much of the other's real estate or the rents and profits thereof as is necessary be assigned and set out to either party for life, or may decree a specific sum be paid by either party." Husband points out that the district courts consider several objective criteria before awarding alimony; however, the district court here did not consider any criteria before awarding alimony.
[¶33] While generally "the record must reflect some evidence that alimony, with its special features, is needed[,]" before the court can award alimony, Husband fails to acknowledge that he agreed to pay Wife alimony in this instance. Johnson v. Johnson , 11 P.3d 948, 951 (Wyo. 2000) ("When alimony is awarded in the absence of a stipulated settlement between the parties, the record must reflect some evidence that alimony, with its special features, is needed.") (Emphasis added.) We have already determined that the stipulated decree between Husband and Wife is a valid and enforceable agreement. There is nothing in Wyoming law that requires the district court to make further findings before awarding alimony when the parties have already agreed to it. Therefore, the district court did not abuse its discretion when it awarded Wife the alimony contained in the stipulated decree.
CONCLUSION
[¶34] The stipulated decree entered into by Husband and Wife is a valid agreement supported by consideration. Therefore, the district court appropriately enforced the order in the divorce decree with respect to the property, debt distribution, and alimony. However, we remand to the district court for further proceedings consistent with this opinion regarding child custody, visitation, and child support.