# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 130

**OCTOBER TERM, A.D. 2025**

**December 10, 2025**

JEREMY D. JONES,

Appellant
(Plaintiff),

v.

BETHANY D. YOUNG,

Appellee
(Defendant).

BETHANY D. YOUNG,

Appellant
(Defendant),

v.

JEREMY D. JONES,

Appellee
(Plaintiff).

S-25-0050, S-25-0051

*Appeal from the District Court of Albany County*
*The Honorable Misha E. Westby, Judge*

***Representing Jeremy D. Jones:***
   Jordan A. Surber, Coal Creek Law LLP, Cheyenne, Wyoming. Argument by Ms.
   Surber.

*Representing Bethany D. Young:*

Abigail E. Fournier and Linda J. Steiner, Steiner, Fournier, Zook & Case, LLC, Cheyenne, Wyoming. Argument by Ms. Zook.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, JAROSH, and HILL, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**BOOMGAARDEN, Chief Justice.**

[¶1]     This case presents an appeal and cross-appeal from a decree of divorce. Jeremy D. Jones (Husband) challenges the district court's interpretation of the parties' postnuptial agreement and its valuation and distribution of the marital property. On cross-appeal, Bethany D. Young (Wife) challenges the court's ruling that the postnuptial agreement was enforceable. We affirm.

## *ISSUES*

[¶2]     The issues on appeal are:

1.    Did the district court err in ruling that the parties' postnuptial agreement was enforceable?

2.    Did the district court err in interpreting the postnuptial agreement to allow the court to exercise its discretion in the distribution of marital property?

3.    Did the district court abuse its discretion in calculating the value of the marital residence?

## *FACTS*

[¶3]     Husband and Wife married on July 5, 2014, and had no children. Before marrying, they agreed to enter into a prenuptial agreement, but they did not execute an agreement before their wedding. Instead, two days after the wedding, they executed a postnuptial agreement.

[¶4]     The postnuptial agreement stated that "a full and complete disclosure of all assets has been made by both parties," and that "[t]he parties mutually desire to keep their respective property separate and not marital property during their marriage as more fully set forth" in the agreement. The agreement further stated it was "made in consideration of One Hundred Dollars ($100.00) exchanged between the parties."

[¶5]     Prior to the marriage, the parties acquired land in the Canyon Acres Subdivision of Albany County for $115,000. Wife contributed $26,500 to the purchase, and the remainder of the purchase price was funded with a mortgage. After the parties married, they made improvements to the property including construction of a home with 2,700 square feet of finished living space, a triple attached garage, and a detached shop. Husband contributed approximately $380,000 to the improvements, including $180,000 to $200,000 from the sale of a home he owned prior to the marriage. He also made all mortgage payments on the property during the parties' marriage. Wife paid $9,000 of an

1

$18,000 charge to refinance the mortgage on the home and did the bulk of the parties' housework and purchasing of groceries and alcohol.

[¶6]     The parties also acquired six vehicles during their marriage, including a 2019 Ford Raptor to serve as Wife's daily vehicle. The Raptor's purchase price was approximately $74,000. Husband made a down payment on the Raptor of approximately $32,000, and Wife has made all monthly loan payments on the vehicle since the date of purchase. The remaining vehicles purchased during the marriage were a 2016 Chevrolet 3500, a 2009 Mercedes SL63, a 2005 Freightliner Columbia Toter Home RV and Trailer, a Kubota skid steer, and a 2019 Can-Am Maverick. Husband purchased these five vehicles with no contributions from Wife.

[¶7]     The parties separated in late 2020, and in January 2021, Husband filed a complaint for divorce. Soon after, the district court entered an interim order that awarded possession of the marital residence to Husband pending entry of a final decree. The parties exchanged discovery, and in June 2021, Husband moved for partial summary judgment seeking a ruling that the parties' postnuptial agreement was a valid and enforceable contract. Wife opposed the motion arguing that the agreement was unenforceable on grounds that the parties did not have a meeting of the minds, there had been a unilateral mistake, the agreement lacked sufficient consideration, and the terms of the agreement were unconscionable. Wife's opposition contained no citations to the record in the form of affidavits or otherwise. Instead, the opposition had attached to it a document entitled "Verification," which was signed by Wife and stated, "I, Bethany Young being duly sworn, depose and say as follows: I have read the foregoing, know the contents thereof and that the facts set forth therein are true."

[¶8]     The district court rejected Wife's arguments and ruled the agreement was enforceable. In so ruling, the court observed:

> Ms. Young has failed to properly support her arguments by citing to specific pieces of admissible evidence which show there exists a genuine dispute of material fact. Her asserted facts differ from Mr. Jones's only on the issue of consideration, and due to her insufficient support for that contention, the Court has already found that fact to be undisputedly in favor of Mr. Jones's version of events. Otherwise, her asserted facts align with those put forward (and supported) by Mr. Jones. There are no material facts in genuine dispute.

[¶9]     Husband thereafter filed a second motion for summary judgment arguing that the parties' postnuptial agreement "disposes of all remaining issues as to the distribution of the parties' property and debt." Wife opposed the motion, and the district court denied it.

2

The court concluded that the postnuptial agreement contemplated that at least some of the property acquired during the parties' marriage would be subject to equitable distribution through mutual agreement of the parties or judicial action, and it found disputed issues of fact remained concerning that property.

[¶10]   The district court held a one-day bench trial in May 2023. Concerning the value of the marital residence, Husband presented the testimony of John Bayer, a certified residential real estate appraiser, and Robert Schutterle, a licensed realtor. Mr. Bayer appraised the home in March 2021, shortly after the parties separated, and valued it at $775,000. He did not know the value of the home at the time of trial and agreed that the real estate market had changed dramatically since the date of his appraisal. Mr. Schutterle prepared a comparative market analysis of the marital residence in February 2023 and opined that the home's value was between $890,000 and $925,000. He testified he would have recommended listing the property for $925,000, and his opinion remained the same at the time of trial. Wife also testified concerning the value of the property. She believed the property was worth $1,026,000 but had no admissible support for her opinion.

[¶11]   In June 2023, the district court entered a decree of divorce. The court considered the income of each party and found as follows:

> Mr. Jones is a chiropractor and the sole owner of Laramie Spinal Care Center and is a part-owner of a family dry-cleaning business. Mr. Jones, by way of his two businesses, claimed an income of $36,000 on his taxes. Nonetheless, the Court finds that Mr. Jones earns a comfortable annual income. Ms. Young is employed as a regional vice president at American Trucking Association, Inc., and earns $140,000.00 per year.

[¶12]   The district court ruled the six vehicles purchased during the marriage and the marital home were subject to division under section one (d) of the postnuptial agreement, which specified that real or personal property acquired during the marriage "shall be distributed as agreed between the parties and if the parties are not able to agree, as decreed by a court of competent jurisdiction." It awarded Wife the 2019 Ford Raptor, without giving Husband credit for making the initial down payment on the vehicle. It awarded Husband the other five vehicles and the marital residence.

[¶13]   As to the marital residence, the district court found Husband made all monthly mortgage payments, and Wife "made significant contributions by cooking, cleaning, buying the bulk of the groceries, and maintaining the marital residence." The court did not award either party an amount for those contributions, but it awarded Husband $209,000, which consisted of $200,000 from the sale of his prior separate residence and $9,000 he contributed to the charge for refinancing the mortgage on the marital residence.

3

It awarded Wife $35,500, which consisted of her initial down payment of $26,500 on the purchase of the land and her $9,000 contribution to the refinancing charge. The court further ordered:

> The parties shall conduct another appraisal of the marital residence to have a current and accurate value of the residence as of 2023. Such appraisal will then be the determining value of the marital residence. However, in no case shall the marital residence be valued less than $925,000.00. Mr. Jones may select an appraiser of his choice. Following the appraisal, both parties shall split and divide evenly all remaining equity of the marital residence.

[¶14] Husband timely appealed to this Court. We concluded the district court's decree of divorce was not a final appealable order because the court did not set a final value on the marital residence, which left the property's value unresolved and potentially open to further dispute. We thus dismissed the appeal. *Jones v. Young*, 2024 WY 64, 550 P.3d 91 (Wyo. 2024).

[¶15] In July 2024, Husband filed an October 6, 2023 appraisal of the marital residence, which valued the property at $850,000. Upon the district court's order, Husband also filed a current mortgage statement, which reflected an outstanding balance on the property's mortgage of $419,410. In November 2024, the court entered a revised decree that set the value of the marital residence at $925,000 and calculated the total equity in the property to be $505,590 based on the current mortgage statement. After deducting the amounts the court had awarded the parties for their respective contributions, $209,000 to Husband and $35,500 to Wife, a balance of $261,090 of equity remained, which the court split evenly between the parties.

[¶16] Husband timely appealed, and Wife cross-appealed. This Court consolidated the appeals for purposes of oral argument and decision.

## DISCUSSION

### I. The district court did not err in ruling on summary judgment that the parties' postnuptial agreement was enforceable.

[¶17] Although the question of the enforceability of the postnuptial agreement was raised on Wife's cross-appeal from the district court's summary judgment ruling, its resolution could affect our consideration of the issues raised in Husband's appeal. We therefore address the agreement's enforceability as the first issue.

4

## A.  Standard of Review

[¶18]  Summary judgment is properly granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." W.R.C.P. 56(a). "We review a district court's decision to grant summary judgment de novo." *Drewry v. Brenner*, 2025 WY 121, ¶ 14, 579 P.3d 49, 55 (Wyo. 2025) (citing *Leeks Canyon Ranch, LLC v. Jackson Hole Hereford Ranch, LLC*, 2025 WY 63, ¶ 17, 569 P.3d 1120, 1126 (Wyo. 2025)).

> We review a summary judgment in the same light as the district court, using the same materials and following the same standards. We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record.

*Drewry*, 2025 WY 121, ¶ 14, 579 P.3d at 55 (quoting *Leeks Canyon Ranch*, 2025 WY 63, ¶ 17, 569 P.3d at 1126–1127).

[¶19]  A summary judgment motion implicates shifting burdens as follows:

> The moving party bears the initial burden to make a prima facie showing that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. A moving party who does not have the ultimate burden of persuasion may establish a prima facie case for summary judgment by showing a lack of evidence on an essential element of the opposing party's claim. If the moving party meets this initial burden, the opposing party is obligated to respond with materials beyond the pleadings to show a genuine issue of material fact. A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties.

*Drewry*, 2025 WY 121, ¶ 15, 579 P.3d at 55–56 (citation modified). We may affirm a summary judgment ruling on any basis supported by the record. *Bain v. City of Cheyenne*, 2025 WY 67, ¶ 6, 570 P.3d 725, 727 (Wyo. 2025) (citing *Sorensen v. Halling*, 2025 WY 8, ¶ 6, 561 P.3d 1241, 1244 (Wyo. 2025)).

**B.      Sufficiency of Wife's Verified Brief Opposing Summary Judgment**

[¶20] In response to Husband's motion for a summary judgment ruling that the postnuptial agreement was enforceable, Wife argued the agreement was unenforceable on grounds that the parties did not have a meeting of the minds, there had been a unilateral mistake, the agreement lacked sufficient consideration, and the agreement was unconscionable. On appeal, Wife limits her argument to the grounds of unconscionability and unilateral mistake.

[¶21] Before turning to each of these grounds, we address Wife's argument that the district court erred in failing to consider the testimonial and evidentiary value of her "verified brief." She contends that because her brief was verified by her sworn and notarized signature, it was the equivalent of an affidavit or declaration, as required by the Wyoming Rules of Civil Procedure.

[¶22] Rule 56(c) governs the procedure for summary judgment and requires that factual allegations in a summary judgment motion or opposition to the motion be supported by the record. It specifies that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." W.R.C.P. 56(c)(1)(A).

[¶23] We have observed that "[b]ecause the Wyoming Rules of Civil Procedure were adopted to promote an orderly and efficient means for handling and disposing of litigation, '[c]ompliance with these rules of procedure in summary judgment matters is mandatory.'" *Braunstein v. Robinson Fam. Ltd. P'ship LLP*, 2010 WY 26, ¶ 15, 226 P.3d 826, 832–33 (Wyo. 2010) (quoting *Platt v. Creighton*, 2007 WY 18, ¶ 9, 150 P.3d 1194, 1199 (Wyo. 2007)); *see also Hickey v. Burnett*, 707 P.2d 741, 745 (Wyo. 1985) (reference to materials not filed with summary judgment motion was not "within the spirit and intent of the rules," "must be condemned," and would "not support entry of summary judgment"). We have also held that material presented to a trial court on summary judgment "should be as carefully tailored and professionally correct as any evidence which is admissible to the court at the time of trial." *Gumpel v. Copperleaf Homeowners Ass'n*, 2017 WY 46, ¶ 88, 393 P.3d 1279, 1302–03 (Wyo. 2017) (quoting *Rivers v. Moore, Myers & Garland*, 2010 WY 102, ¶ 22, 236 P.3d 284, 291 (Wyo. 2010)).

[¶24] Wife's "verified brief" plainly did not cite to materials in the record. That said, we need not determine whether the verification of her brief otherwise satisfied the strict requirements set by our rules and precedent. As our discussion below will show, even if we were to treat Wife's summary judgment brief as compliant with Rule 56(c), it did not create a disputed issue of fact that was material to the enforceability of the postnuptial

agreement. We thus proceed to the two grounds asserted by Wife: unconscionability and unilateral mistake.

## C.    Unconscionability

[¶25]   Whether a contract is unconscionable is a question of law. *Long v. Long*, 2018 WY 26, ¶ 14, 413 P.3d 117, 123 (Wyo. 2018) (citing *Kindred Healthcare Operating, Inc. v. Boyd*, 2017 WY 122, ¶ 12, 403 P.3d 1014, 1019 (Wyo. 2017)). "We do not lightly interfere with the freedom of contract and, therefore, approach claims that a contract is unconscionable cautiously." *Long*, 2018 WY 26, ¶ 15, 413 P.3d at 123. "The question of whether a contract is unconscionable is determined as of the time the contract was made and not in hindsight." *Kindred Healthcare*, 2017 WY 122, ¶ 30, 403 P.3d at 1022 (citing *Pittard v. Great Lakes Aviation*, 2007 WY 64, ¶ 33, 156 P.3d 964, 974 (Wyo. 2007)). We balance two factors when determining whether a contract is unconscionable:

> In deciding whether a contract is unconscionable, we consider the claim from two perspectives. First, we consider whether the contract provisions unreasonably favor one party over the other. Second, we consider whether the latter party lacked a meaningful choice in entering into the contract. The first perspective concerns the contract's substantive unconscionability. The second concerns its procedural unconscionability. As noted in *Roussalis* [*v. Wyo. Med. Ctr., Inc.*], 4 P.3d [209,] 246, most courts require evidence of both and take a balancing approach in applying them. In other words, both the absence of meaningful choice and the presence of contract provisions unreasonably favorable to one party must be found in order to sustain a claim that a contract is unconscionable.

*Long*, 2018 WY 26, ¶ 15, 413 P.3d at 123–24 (quoting *Pittard*, 2007 WY 64, ¶ 34, 156 P.3d at 974).

### 1.    Substantive Unconscionability

[¶26]   In arguing to the district court that the postnuptial agreement was substantively unconscionable, Wife argued, "[t]he *Agreement* unreasonably favors [Husband]. All his assets prior to marriage, and during the marriage, notably his lucrative business and various vehicles are covered under the *Agreement*." This statement was the entirety of her argument on the question of substantive unconscionability.

[¶27]   On appeal, Wife's argument is much more detailed and compares the specific property of Wife that the agreement protects with the specific property of Husband that

the agreement protects, both in the event of divorce and for estate planning purposes. Her argument also attempts to establish values for Husband's pre-marital vehicles based on various online valuation tools and publications, and values for his business interests based on extrapolations from the mortgages on the real property those businesses own as well as market values purportedly found on the Albany County Treasurer's website for those real properties. We reject these arguments.

[¶28] First, in reviewing a summary judgment ruling, we are confined to the same materials that were presented to the district court. *Drewry*, 2025 WY 121, ¶ 14, 579 P.3d at 55 ("We review a summary judgment in the same light as the district court, using the same materials and following the same standards."). Wife presented no evidence to the district court concerning the value of Husband's protected assets. Additionally, Wife's estimation of the value of these assets is no more than conjecture and speculation and could not have in any event satisfied her burden on summary judgment. *See Lovato v. Tim Case*, 2022 WY 151, ¶ 15, 520 P.3d 1144, 1150 (Wyo. 2022) ("Speculation, conjecture, the suggestion of a possibility, guesses, or even probability, are insufficient to establish an issue of material fact.") (citation omitted); *see also Lewis v. Francis*, 2025 WY 109, ¶ 12, 577 P.3d 433, 436 (Wyo. 2025) ("The party opposing the motion must present specific facts; relying on conclusory statements or mere opinion will not satisfy that burden, nor will relying solely upon allegations and pleadings.").

[¶29] Finally, we have repeatedly held that we will not consider arguments on appeal that were not presented to the district court, unless those arguments are jurisdictional or of a fundamental nature. *Sharpe v. Evans*, 2025 WY 70, ¶ 14, 570 P.3d 731, 736 (Wyo. 2025). A party does not adequately raise an issue or argument below unless it is raised "with at least a minimum effort to present a cogent legal argument." *WyoLaw, LLC v. Off. of Att'y Gen., Consumer Prot. Unit*, 2021 WY 61, ¶ 40, 486 P.3d 964, 975 (Wyo. 2021). Wife's perfunctory argument before the district court that the postnuptial agreement unreasonably favored Husband because it protected his "lucrative business and various vehicles" was not sufficient to preserve her now detailed attempt to show a discrepancy in the respective values of the parties' protected assets. *See Holding v. Luckinbill*, 2022 WY 10, ¶ 34, 503 P.3d 12, 22 (Wyo. 2022) (statement concerning rule against perpetuities at oral argument on summary judgment motion, absent authority and support in pleadings, was insufficient to preserve argument for appeal); *WyoLaw*, 2021 WY 61, ¶ 40, 486 P.3d at 975 ("WyoLaw did not raise its due process claim below or preserve it for appeal by alluding to arbitrary results.").

[¶30] For these reasons, we confine Wife to the argument she made below, that the postnuptial agreement unreasonably favored Husband because it protected his "lucrative business and various vehicles." Given the caution with which we must approach claims of unconscionability, this conclusory statement does not persuade us that the postnuptial agreement was substantively unconscionable. *See Long*, 2018 WY 26, ¶ 20, 413 P.3d at 124–25 (recognizing "Husband agreed to an unwise bargain that significantly favored

8

Wife" but holding "all contracts come with some element of risk, and courts should not aid those who have agreed to an unwise bargain").

### 2.    Procedural Unconscionability

[¶31]  We consider the following factors when determining whether a contract is procedurally unconscionable:

> [d]eprivation of meaningful choice as to whether to enter into the contract, compulsion to accept terms, opportunity for meaningful negotiation, such gross inequality of bargaining power that negotiations were not possible, characteristics of alleged aggrieved party (underprivileged, uneducated, illiterate, easily taken advantage of), and surprise by fine print or concealed terms.

*Long*, 2018 WY 26, ¶ 17, 413 P.3d at 124 (quoting *Pittard*, 2007 WY 64, ¶ 35, 156 P.3d at 974).

[¶32]  As with the issue of substantive unconscionability, Wife presents an argument to this Court that differs from what she argued to the district court on the question of procedural unconscionability. Before the district court, Wife argued that Husband's attorney drafted the postnuptial agreement, that she "did not have counsel to advocate on her behalf," that she "did not have an opportunity for meaningful negotiation," that she "has several of the characteristics of someone who has unequal bargaining power," and that "she does not have the same education and experience as [Husband]."

[¶33]  On appeal, Wife deviates from her argument to the district court by first conceding that she "is far from uneducated, underprivileged, or illiterate. Far from it, she holds a degree and excels in her field." She goes on to argue, however, that  two  days  after  her wedding, she "was presented a new offer to contract away rights newly obtained with the marriage, with no time to find counsel, investigate differences between prenuptial and postnuptial agreements, or research on her own how her position may have changed." She further contends that she "had two options: sign the contract or risk the dissolution of a marriage not yet a week old," and "was compelled to accept the terms of the contract or risk losing her marriage, thus depriving her of meaningful choice."

[¶34]  It is undisputed that Husband's attorney drafted the postnuptial agreement and that Wife did not consult with her own attorney before signing it. Wife's verified brief before the district court contained a statement in its fact section that she "did not consult an attorney, or have an opportunity to consult an attorney, prior to signing the *Agreement*." Aside from this conclusory statement, however, Wife offered no evidence as to why she did not have an opportunity to seek counsel or how she was denied that opportunity.

Indeed, the postnuptial agreement, which Wife has admitted she had the education and sophistication to read and understand, states the contrary in section five of its terms:

> The parties both stipulate that they either were represented by legal counsel of their choice in the preparation of this agreement or that, knowing they had the right to confer with legal counsel elected to waive that right; that they have read this agreement; and that they fully understand the terms, provisions, and legal consequences of this agreement. Bethany Young specifically understands that although this agreement was prepared by John M. Kuker of the Kuker Group, LLP, she has been advised by Mr. Kuker to seek advice from an attorney of her choosing with regard to the terms and enforceability of this agreement.

[¶35] Given the conclusory nature of Wife's assertion that she did not have an opportunity to consult an attorney before signing the postnuptial agreement, and her contrary stipulation in the agreement, we cannot conclude that she has shown a disputed issue of fact as to procedural unconscionability arising from her lack of legal representation. *Lewis*, 2025 WY 109, ¶ 12, 577 P.3d at 436 ("The party opposing the motion must present specific facts; relying on conclusory statements or mere opinion will not satisfy that burden, nor will relying solely upon allegations and pleadings."). Her remaining assertions to the district court, that she "did not have an opportunity for meaningful negotiation," and "has several characteristics of someone who has unequal bargaining power," are equally conclusory and did not create disputed issues of fact on the question of procedural unconscionability.

[¶36] That leaves Wife's remaining argument, that she felt compelled to accept the terms of the postnuptial agreement lest she risk ending her new marriage. First, Wife did not make this argument to the district court, and as we have said, we do not consider new arguments on appeal. *Sharpe*, 2025 WY 70, ¶ 14, 570 P.3d at 736. Moreover, Wife points to no evidence in the record that she had this concern at the time she signed the postnuptial agreement.

[¶37] Based on the foregoing, even if we consider Wife's verified brief as compliant with Rule 56(c), she has failed to present any disputed issue of fact relevant to the questions of substantive or procedural unconscionability. The district court therefore did not err in granting Husband summary judgment on this claim.

## D.   Unilateral Mistake

[¶38] A mistake by only one of the parties to a contract "ordinarily does not offer a reason for a remedy for that party unless the mistake was produced by the fraudulent or

inequitable conduct of the other party." *McNeill Fam. Tr. v. Centura Bank*, 2003 WY 2, ¶ 16, 60 P.3d 1277, 1284 (Wyo. 2003) (citing *Givens v. Fowler*, 984 P.2d 1092, 1096 (Wyo. 1999)). Wife contends a unilateral mistake occurred when the parties executed the postnuptial agreement because she mistakenly believed that a $100 check she wrote to Husband was payment for the attorney who drafted the agreement, rather than the consideration recited in the agreement itself. She contends her mistaken belief was based on Husband's representation to her concerning the purpose of the check. She further contends that the district court erred in rejecting this assertion for failure to cite to evidence in the record because her verified brief was testimonial and asserted this fact.

[¶39] Wife appears to argue that her unilateral mistake regarding the purpose of the $100 check she gave Husband negates the existence of consideration and renders the postnuptial agreement unenforceable. She is incorrect.

[¶40] Wife is correct that a postnuptial agreement must be supported by consideration and the marriage itself cannot provide that consideration. *Long*, 2018 WY 26, ¶ 11, 413 P.3d at 123 (citing *Combs v. Sherry-Combs*, 865 P.2d 50, 53 (Wyo. 1993)). "Instead, there must be an exchange of 'other identifiable consideration.'" *Long*, 2018 WY 26, ¶ 11, 413 P.3d at 123 (quoting *Combs*, 865 P.2d at 54–55). "Consideration may take a variety of forms including the performance of some act, a forbearance, or the creation, modification, or destruction of a legal relationship." *Kindred Healthcare*, 2017 WY 122, ¶ 42, 403 P.3d at 1025 (quoting *Schlesinger v. Woodcock*, 2001 WY 120, ¶ 14, 35 P.3d 1232, 1237 (Wyo. 2001)).

[¶41] Here, in addition to the exchange of $100 expressly identified in the postnuptial agreement as consideration, the parties exchanged promises to forgo rights in each other's premarital property, as well as their statutory rights to elective shares of each other's estates. *See Combs*, 865 P.2d at 55 (reviewing agreement for "identifiable consideration in the form of an act, forbearance or a legal relation in the creation of the marriage document"); *see also Hollar v. Hollar*, 403 So.3d 843, 850 (Ala. Civ. App. 2023) (finding adequate consideration for postnuptial agreement where husband gave up any right or interest to wife's separate premarital property as well as certain after-acquired property); *Hershkowitz v. Levy*, 139 N.Y.S.3d 617, 621 (N.Y. App. Div. 2021) (finding adequate consideration for postnuptial agreement where parties gave up rights to each other's compensation and waived rights to maintenance from each other). The postnuptial agreement was thus supported by adequate consideration.

[¶42] Whether the parties in fact exchanged the $100 consideration called for by the postnuptial agreement is immaterial to this conclusion. As one authority explained:

> Where no consideration exists, and is required, . . . a lack of consideration results in no contract being formed. By contrast, when there is a failure of consideration, there is

11

originally a contract when the agreement is made, but because of some supervening cause, the promised performance fails. . . . To put it another way, in a contract dispute, a failure of consideration is the neglect, refusal and failure of one of the contracting parties to do, perform, or furnish . . . the consideration in substance and in fact agreed on. Thus, failure of consideration is essentially identical to lack of substantial performance. When consideration for contract fails, i.e., when one of the exchanged promises is not kept, this does not mean that parties' voluntary bilateral consent to contract never existed, such that contract is automatically and utterly void, but only that contract was broken.

3 *Williston on Contracts* § 7:11 (4th ed. May 2025 update).

[¶43] In other words, that Wife may not have paid Husband $100 as required by the postnuptial agreement may have given Husband grounds to claim a breach, which he has not done, but it did not change the fact that the agreement was supported by adequate consideration. Because Wife's alleged failure to pay the $100 in consideration to Husband did not affect the enforceability of the agreement, we again need not address whether the district court should have accepted the facts alleged in Wife's verified brief as Rule 56(c)-compliant evidence of that failure.

## II. The district court did not err in interpreting the postnuptial agreement to require the court to make a just and equitable distribution of marital property.

[¶44] Marital agreements, whether prenuptial or postnuptial, are valid and enforceable in Wyoming and are governed by the same rules of construction applicable to other contracts. *See Morrison v. Hinson-Morrison*, 2024 WY 96, ¶ 15, 555 P.3d 944, 952 (Wyo. 2024); *Long*, 2018 WY 26, ¶ 11, 413 P.3d at 122. "Contract interpretation is a matter of law which we consider de novo." *Morrison*, 2024 WY 96, ¶ 15, 555 P.3d at 952 (quoting *Hensel v. DAPCPA RPO, LLC*, 2023 WY 84, ¶ 12, 534 P.3d 460, 464 (Wyo. 2023)).

[¶45] "Our goal in interpreting contracts is to 'ascertain the parties' intent as evidenced by the specific language of the agreement.'" *Morrison*, 2024 WY 96, ¶ 15, 555 P.3d at 952 (quoting *Van Vlack v. Van Vlack*, 2023 WY 104, ¶ 20, 537 P.3d 751, 757 (Wyo. 2023)). In accord with our established standards for interpretation of contracts,

the words used in the contract are afforded the plain meaning that a reasonable person would give them. When the provisions in the contract are clear and unambiguous, the court looks only to the "four corners" of the document in

arriving at the intent of the parties. In the absence of any ambiguity, the contract will be enforced according to its terms because no construction is appropriate.

*Morrison*, 2024 WY 96, ¶ 16, 555 P.3d at 952 (quoting *Van Vlack*, 2023 WY 104, ¶ 20, 537 P.3d at 757).

[¶46] "An ambiguous contract is an agreement which is obscure in its meaning, because of indefiniteness of expression, or because a double meaning is present." *Van Vlack*, 2023 WY 104, ¶ 20, 537 P.3d at 757 (internal quotation marks omitted) (quoting *Brockway v. Brockway*, 921 P.2d 1104, 1106 (Wyo. 1996)). Whether a contract is ambiguous is a question of law for a court to decide. *Van Vlack*, 2023 WY 104, ¶ 20, 537 P.3d at 757.

[¶47] The provisions of the postnuptial agreement relevant to the parties' dispute are contained in section one of the agreement. They state:

> (a)    In the event of divorce, subject to the provisions of Section (d), all real and personal property owned by either of the parties as of the date set forth below, shall be his or her respective separate property/debt and not marital property/debt, specifically including the following listed property/debt.
>
> . . .
>
> (b)    Any assets obtained by either party as a consequence of the use, investment, reinvestment or any transfer of any portion of his or her separate estate, and any income therefrom, and any appreciation in the value thereof, shall remain part of his or her separate estate.
>
> (c)    . . . It is the parties' intention that any commingling or pooling of assets not be interpreted to imply any abandonment of the terms and provisions of this Agreement, and that in such instances that each party be determined to be the owner of that proportion of the total fund or value of the assets in question reflecting the proportionate amount deposited or invested by each party from their separate property. . . .
>
> (d)    All other real and personal property that either party may acquire from any source whatsoever during their marriage (except future inherited property), shall be

13

distributed as agreed between the parties and if the parties are not able to agree, as decreed by a court of competent jurisdiction.

[¶48]   The parties disagree as to how the postnuptial agreement should be interpreted and applied to property purchased during the marriage, in particular the six vehicles and the marital residence. They do not, however, contend the agreement is ambiguous, and because we find no obscurity in its meaning because of indefiniteness of expression or double meanings, we agree.

[¶49]   Husband contends that because income he earned during the marriage was earned from the chiropractic business he owned before the parties married, that income remained his separate asset pursuant to section one (b) of the agreement. In so arguing, he reasons that his earnings as a chiropractor were "a consequence of the use" of his premarital business asset. He thus contends that any property he invested those funds in during the marriage is governed by either section one (b), which would make the purchased property solely his own, or section one (c), which would make the purchased property a commingled premarital asset. Specifically, Husband contends that the five vehicles he purchased solely with his own earnings are governed by section one (b) and the Ford Raptor and marital residence are commingled premarital properties subject to section one (c).

[¶50]   Wife disagrees that income Husband earned from his employment during the parties' marriage remained part of his separate premarital estate. She contends that neither section one (b) nor (c) applies to property either party or both parties purchased during the marriage and section one (d) is instead controlling. We agree with Wife.

[¶51]   "Our rules of interpretation require that we interpret a contract as a whole, reading each provision in light of all the others to find their plain meaning." *Eiden Constr., LLC v. Hogan & Assocs. Builders, LLC*, 2024 WY 138, ¶ 44, 561 P.3d 304, 318 (Wyo. 2024) (quoting *Larson v. Burton Construction, Inc.*, 2018 WY 74, ¶ 15, 421 P.3d 538, 544 (Wyo. 2018)). Additionally, "[w]e presume each provision in a contract has a purpose, and we avoid interpreting a contract so as to find inconsistent provisions or so as to render any provision meaningless." *Eiden Constr., LLC,* 2024 WY 138, ¶ 44, 561 P.3d at 318 (quoting *Wallop Canyon Ranch, LLC v. Goodwyn*, 2015 WY 81, ¶ 35, 351 P.3d 943, 953 (Wyo. 2015)).

[¶52]   Section one (a) of the postnuptial agreement identifies the property subject to the agreement as "all real and personal property owned by either of the parties as of the date set forth below[.]" The referenced date was two days after the parties married, so the property protected under the agreement was each party's separate premarital property. The agreement certainly could have also provided that all income earned by either party during their marriage would remain his or her separate property, and all property

14

separately purchased during the marriage by either party would remain his or her separate property, but it did not. *See Morrison*, 2024 WY 96, ¶ 17, 555 P.3d at 953 ("[W]here a contract is silent on a particular matter that easily could have been drafted into it, a court should refrain from supplying the missing language under the pretext of contract interpretation.") (quoting *In re CDR*, 2015 WY 79, ¶ 30, 351 P.3d 264, 270–271 (Wyo. 2015)). Instead, section one (d) provides:

> (d)     All other real and personal property that either party may acquire from any source whatsoever during their marriage (except future inherited property), shall be distributed as agreed between the parties and if the parties are not able to agree, as decreed by a court of competent jurisdiction.

[¶53] By its plain terms, section one (d) governs disposition of real or personal property the parties acquired during their marriage "from any source whatsoever." The interpretation Husband urges for sections one (b) and (c) contradicts the plain meaning of section one (d) and would render it meaningless. We reject his proffered interpretation and instead interpret sections one (b) and (c) in a manner that gives meaning to all three provisions.

[¶54] Again, section one (b) of the agreement provides:

> (b)     Any assets obtained by either party as a consequence of the use, investment, reinvestment or any transfer of any portion of his or her separate estate, and any income therefrom, and any appreciation in the value thereof, shall remain part of his or her separate estate.

[¶55] Husband testified he was employed as a chiropractor by his business, the Laramie Spinal Care Center, and that that employment was the sole source of his income. We find nothing in the language of section one (b) that is aimed at this type of income. The provision is instead aimed at maintaining the separate status of any premarital asset, however much that asset may grow and whatever transformation it may undergo during the marriage. A business asset is certainly capable of producing income, but that is of course different from the income its employees earn. Moreover, we are unable to see the act of working for an entity as a "use" of that entity, and Husband offers no analysis to support that interpretation. As we noted earlier, if either party had desired to keep his or her employment earnings as separate property during the marriage, that term could have been included in the agreement. We will not supply it under the pretext of contract interpretation. *Morrison*, 2024 WY 96, ¶ 17, 555 P.3d at 953.

15

[¶56]   We also reject Husband's argument that the construction of the marital residence and the purchase of the Ford Raptor constituted a "commingling" of separate premarital property, making the distribution of the parties' interests in the two properties subject to section one (c). First, we have already concluded that Husband's employment earnings during the marriage were not part of his separate premarital estate. Additionally, reading the agreement as a whole, we cannot conclude that the purchase of property, real or personal, is a "commingling" of assets. "Commingling" means "[a] mixing together." *Commingling*, Black's Law Dictionary (12th ed. 2024). Mixing together would occur if one or more of the parties' premarital assets were joined, which is the circumstance governed by section one (c). That section one (c) was not meant to apply to property purchased during the marriage is confirmed by section one (d), which by its plain terms is the provision that applies to all property the parties acquired "from any source whatsoever during their marriage."

[¶57]   The district court did not err in its interpretation of the postnuptial agreement. Section one (d) governs the distribution of property purchased during the parties' marriage, and it authorized the court to exercise its discretion in making that distribution.

### III.     *The district court did not abuse its discretion in calculating the value of the marital residence.*

[¶58]   We review a trial court's division of marital property for an abuse of discretion. *Bailey v. Bailey*, 2024 WY 65, ¶ 26, 550 P.3d 537, 547 (Wyo. 2024). "Property settlements present complex problems requiring district courts to assess the respective merits and needs of the parties." *Id*. (quoting *Ransom v. Ransom*, 2017 WY 132, ¶ 31, 404 P.3d 1187, 1194 (Wyo. 2017)). "We do not disturb a property division in a divorce except on clear grounds, because 'the trial court is usually in a better position than the appellate court to judge the parties' needs and the merits of their positions.'" *Bailey*, 2024 WY 65, ¶ 26, 550 P.3d at 547 (quoting *Metz v. Metz*, 2003 WY 3, ¶ 6, 61 P.3d 383, 385 (Wyo. 2003)). "An abuse of discretion will be found if the property division shocks the conscience of the Court and appears to be 'so unfair and inequitable that reasonable people cannot abide by it.'" *Bailey*, 2024 WY 65, ¶ 26, 550 P.3d at 547 (quoting *Hyatt v. Hyatt*, 2023 WY 129, ¶ 11, 540 P.3d 873, 880 (Wyo. 2023)).

[¶59]   We likewise defer to the district court's factual findings unless they are clearly erroneous. *Morrison*, 2024 WY 96, ¶ 18, 555 P.3d at 953. "Factual findings are clearly erroneous when, although there is evidence to support them, the reviewing court is left with the definite and firm conviction upon review of the entire record that the district court made a mistake." *Id*. "[W]hen a party contests the sufficiency of the evidence, we afford 'the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party.'" *Bailey*, 2024 WY 65, ¶ 26, 550 P.3d at 547 (quoting *Snyder v. Snyder*, 2021 WY 115, ¶ 8, 496 P.3d 1255, 1257 (Wyo. 2021)).

[¶60] Husband argues that the district court erred in setting the value of the marital residence at $925,000. First, he contends the record does not support the valuation. Next, he argues the court should have based its distribution on the home's value at the time the parties separated rather than the time of trial.[1] We find no error.

## A.    Record Support for the $925,000 Valuation

[¶61]  In challenging the district court's valuation of the marital residence, Husband does not advocate that the court should have chosen his 2023 post-trial appraisal, which valued the residence at $850,000. He instead argues that the $925,000 valuation was against the great weight of the evidence. We disagree.

[¶62]  Husband presented the testimony of John Bayer, a certified residential real estate appraiser who appraised the marital residence in 2021, shortly after the parties separated. Mr. Bayer valued the home at that time at $775,000. He agreed that in the time that had passed between that appraisal in 2021, and the trial in 2023, the real estate market had "changed somewhat dramatically."

[¶63]  Husband also presented the testimony of Robert Schutterle, a licensed realtor. Mr. Schutterle prepared a comparative property analysis of the marital residence in February 2023, which based on comparable properties valued the home at a range between $890,000 and $925,000. Mr. Schutterle testified that the best comparable he considered was a property next door to the marital residence that was listed for $957,000. He further testified that as of the time of trial, he would have recommended listing the marital residence for $925,000.

[¶64]  Given the testimony of Husband's own experts, we are not left with a definite and firm conviction that the district court made a mistake in valuing the marital residence at $925,000 as of the time of trial. We therefore find no clear error in the court's calculation of the value.[2]

---

[1] Husband filed the post-trial appraisal in July 2024, and the district court thereafter ordered him to provide an updated statement of the outstanding mortgage on the marital home so it could calculate the equity in the home. Husband submitted the updated mortgage statement in November 2024 but now contends the court erred in calculating the equity based on that statement. He argues the court should have instead used the mortgage balance as of the date of the parties' separation because he made all mortgage payments after that date. Although Husband clearly objected to using the date of trial as the date to determine the home's value, he points to nowhere in the record where he objected to providing the updated mortgage statement or argued to the district court that an alternative date should be used for calculating the equity in the property, and in our review of the record we found no such objection or argument. As we have said, we do not consider new arguments on appeal, and we therefore do not consider this further. *See Sharpe*, 2025 WY 70, ¶ 14, 570 P.3d at 736.

[2] Husband contends the district court arbitrarily directed in its original decree that the post-trial appraisal must value the marital residence at no less than $925,000. We do not read the court's original decree as

## B. Choice of 2023 as Date of Valuation

[¶65]   Husband contends that the district court abused its discretion in valuing the marital residence at the time of trial rather than the date of separation because he had sole possession of the property after the parties separated and he alone paid the mortgage on the property and maintained it during that time. Wyo. Stat. Ann. § 20-2-114(a) (2023) directs that

> in granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party[.]

[¶66]   "This court has not identified with particularity the time at which marital property must be valued when dividing property in a divorce. Rather, this court has taken the general approach that the appropriate time of valuation is a matter within the broad and sound discretion of the trial court." *Williams v. Williams*, 2016 WY 21, ¶ 46, 368 P.3d 539, 552 (Wyo. 2016), *overruling on other grounds recognized by*, *Kelly v. Kelly*, 2023 WY 48, ¶ 15, 529 P.3d 494, 499 (Wyo. 2023) (quoting *Wallop v. Wallop*, 2004 WY 46, ¶ 11, 88 P.3d 1022, 1025 (Wyo. 2004)). In this case, while Husband made all contributions to the property during the separation, Wife remained a signatory on the property's mortgage. She testified:

> Over the last two and a half years, I haven't been able to purchase anything, including a vehicle, because my credit is tied up in this mortgage, and it has like severely impacted my ability to acquire assets, especially an asset like a home that would increase in equity and value.

[¶67]   The district court valued and distributed the parties' property in a manner it deemed "just and equitable." In its final decree, it noted that it took into account "the overall contributions of the parties to the marital estate; the parties' current employment and financial situations; the length of the marriage; the position in which these parties

---

ordering that a new appraisal come in at a particular value. It is apparent that the court found the evidence of Husband's own experts established that the value of the property was at least $925,000. The court's decree left room for the possibility that Husband's post-trial appraisal might place a higher value on the property, in which case that would have controlled. These questions were addressed in the dismissal of Husband's first appeal. The only question before us now is whether the record supports the $925,000 valuation, and as we have held, it does.

will be left by the divorce, and the other matters addressed herein." The district court was in the best position to take stock of these matters, and given that both parties incurred housing expenses during their separation and Wife was unable to build equity in a home during that time, we cannot say the court's decision to value the property as of the date of trial was beyond the bounds of reason. We therefore find no abuse of discretion in the court's decision.

[¶68]   Affirmed.